EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Luis E. Rodríguez Sierra<br>    Peticionario<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del E.L.A. y la Judicatura<br>    Recurridos | CC-2000-696<br><br><br><br><br>Consolidado | Certiorari<br><br>2003 TSPR 78<br><br>159 DPR ____ |
| Luis E. Rodríguez Sierra<br>    Recurrido<br><br>        v.<br><br>Administración de los Sistemas de Retiro de los Empleados del E.L.A. y la Judicatura<br>    Peticionarios | CC-2000-644 | |

Fecha: 13 de mayo de 2003

**Número del Caso: CC-2000-696**

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. Dolores Rodríguez de Oronoz

Abogado de la Parte Peticionaria:
                    Lcdo. Moisés Rivera Colón


Oficina del Procurador General:
                    Lcda. Miriam Álvarez Archilla
                    Procuradora General Auxiliar


**Número del Caso: CC-2000-644**

Oficina del Procurador General:
                    Lcda. Miriam Álvarez Archilla
                    Procuradora General Auxiliar

Abogado de la Parte Recurrida:
                    Lcdo. Moisés Rivera Colón

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Rodríguez Sierra

    Peticionario

        v.                                    CC-2000-696

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

    Recurridos

                              Consolidado

Luis E. Rodríguez Sierra

    Recurrido

        v.                                    CC-2000-644

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

    Peticionarios

Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 13 de mayo de 2003

El 3 de junio de 1972 el Sr. Luis E. Rodríguez Sierra sufrió un accidente de trabajo mientras laboraba como guardia de la Policía de Puerto Rico. Como resultado del accidente se le diagnosticó una miosotis lumbo sacra crónica y una lesión al nervio mediano de la extremidad superior izquierda. El Fondo del Seguro del Estado le concedió una incapacidad de cincuenta por

ciento (50%) en la mano izquierda y veinticinco por ciento (25%) por desfiguración de huesos.

En 1974 la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante Administración), le otorgó a Rodríguez Sierra una pensión por incapacidad ocupacional ascendente a $327.50 mensuales, la cual sería efectiva a partir del **3 de febrero de 1974.** Cabe señalar que dicha pensión fue concedida bajo las condiciones entonces establecidas por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro de Personal del Gobierno del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 761, et. seq., (en adelante Ley de Retiro). Entre las condiciones para continuar disfrutando de los beneficios de la pensión, el participante debía someterse a exámenes médicos periódicamente para determinar su estado de salud y grado de incapacidad. Art. 11 de la Ley de Retiro, 3 L.P.R.A. sec. 771. La Ley entonces, no prohibía, al menos no surgía del texto, el que una persona pensionada por incapacidad pudiera laborar en la empresa privada desempeñando funciones distintas a las que realizaba al momento de su incapacidad.

Así las cosas, el 23 de febrero de 1977 y en cumplimiento con lo requerido por ley, el señor Rodríguez Sierra fue examinado por un médico de la Administración quien determinó que la condición de

incapacidad persistía, por lo que se le notificó que continuaría recibiendo la anualidad indefinidamente. La Administración nunca le requirió otro examen médico.

En **1986**, el Art. 11 de la Ley de Retiro fue enmendado por la Ley Núm. 61 de 1 de julio de 1986. Dicha enmienda autorizaba a la Administración a suspender automáticamente el pago de la pensión por incapacidad sin la necesidad de un examen médico en aquellos casos en los cuales el pensionado estuviese trabajando y devengando un salario igual o mayor al importe de la pensión.

Amparada en esta enmienda, el **15 de febrero de 1994** la Administración le notificó al señor Rodríguez Sierra que le suspendería la anualidad a partir de dicho día porque el resultado de una investigación señalaba que desde 1985 ocupaba el puesto de Director de PROSEE en la Institución Universitaria Ana G. Méndez devengando un salario para el 1993 de $1,825 mensuales en contravención al Art. 11 de Ley de Retiro, según enmendada por la Ley Núm. 61.

Posteriormente, el 15 de mayo de 1994 la Administración le notificó al señor Rodríguez Sierra que había incurrido en cobro indebido de pensión ascendente a la cantidad de $34,609.32 durante el período de 1 de julio de 1986 hasta el 14 de febrero de 1994.

Oportunamente, Rodríguez Sierra apeló esta decisión ante la Junta de Síndicos de la Administración (en

adelante Junta). La Junta confirmó la determinación de la Administración. Después de agotar los trámites administrativos, el señor Rodríguez Sierra presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Alegó que la Ley Núm. 61, en ausencia de expresión legislativa, no podía tener carácter retroactivo ya que, como pensionado, se le estaría privando de derechos adquiridos bajo la ley anterior, lo que a su vez menoscabaría las relaciones contractuales. También impugnó la decisión de la Administración de cobrarle lo alegadamente pagado indebidamente.

El Tribunal de Circuito, mediante sentencia de 30 de junio de 2000, resolvió lo siguiente: (1) que la suspensión de la pensión fue por actos realizados con posterioridad a la vigencia de la Ley Núm. 61, por lo que ello no constituye una aplicación retroactiva de la ley; (2) que las enmiendas efectuadas al Art. 11 de la Ley de Retiro no constituyeron un menoscabo a una obligación contractual ya que no se modificó la obligación de proveer ingresos a aquellos participantes del Sistema de Retiro que estuvieron incapacitados; (3) que el procedimiento adjudicativo que llevó a cabo la Junta cumplió con el debido proceso de ley; (4) que el estatuto no exige al pensionado que devuelva cantidad alguna recibida luego de entrar en vigor la Ley Núm. 61; (5) que la Ley Núm. 61 no autoriza a la Administración a

recuperar cantidad alguna por pensiones pagadas indebidamente y; (6) que los pagos efectuados antes de la suspensión fueron legales, por lo que no hubo pagos erróneos o indebidos. En vista de lo anterior, el foro apelativo confirmó la decisión de la Junta en cuanto a la terminación de los beneficios por incapacidad y revocó en cuanto a la orden de satisfacer a la Administración los $34,609.32.

Inconforme, el señor Rodríguez Sierra, mediante el recurso CC-2000-696, acude ante nos con el siguiente señalamiento de error:

> Erró el Honorable Tribunal Apelativo al confirmar la determinación de la aplicación retroactiva de la enmienda de 1986 al recurrente [señor Rodríguez Sierra], en violación a la cláusula constitucional de que no se menoscabarán las relaciones contractuales, constituyendo esto, de igual modo, una violación al Debido Proceso de Ley (sustantivo) de Garantía Constitucional.

Igualmente, la Administración, mediante el recurso CC-2000-644, acude ante nos con el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la Administración no tenía autoridad en ley para solicitar el cobro indebido de pensión durante la vigencia de la pensión y antes de la terminación de beneficios.[1]

---

[1] Por estar íntimamente relacionados discutiremos ambos errores en conjunto.

II

La Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro de Personal del Gobierno del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 761, et. seq., creó un sistema de retiro y beneficios denominado "Sistema de Retiros de los Empleados del Gobierno de Puerto Rico y sus instrumentalidades." 3 L.P.R.A. sec. 761.[2] Los fondos de este sistema de retiro se utilizan en provecho de los participantes de su matrícula,[3] esto es, la gran mayoría de los empleados del gobierno estatal, sus dependientes y beneficiarios, para el pago de anualidades por retiro y por **incapacidad**, y beneficios por defunción entre otros. Art. 1 de la Ley de Retiro, 3 L.P.R.A. sec. 761. Es por ello que "[s]e entenderá que todo empleado miembro del Sistema consiente y conviene en que se le hagan los descuentos de su retribución [para fines de retiro]... ." Art. 20, de la Ley de Retiro, 3 L.P.R.A. sec. 780(f). Véase, además, Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1032 (1992).

---

[2]    Aclaramos que la Ley de Retiro ha sido enmendada en varias ocasiones. Sin embargo, para propósito de nuestra argumentación utilizaremos las disposiciones vigentes al momento de los hechos.

[3]    Participante o miembro se refiere a todo empleado acogido al Sistema de Retiros o que pertenezca a su matrícula. Art. 3 de la Ley de Retiro, 3 L.P.R.A. sec. 763.

> En virtud de dicho consentimiento [y
> satisfechos los requisitos exigidos por
> ley], el empleado obtiene un derecho
> garantizado sobre sus aportaciones y al
> "jubilarse"[4] [o incapacitarse] tiene
> *derecho a recibir una anualidad* por cuanto
> el propósito de la referida legislación es
> proveerle un ingreso mínimo de subsistencia
> al empleado jubilado [o incapacitado].
> (Énfasis en el original.) Calderón v. Adm.
> Sistemas de Retiro, supra.

La Ley de Retiro contiene varias modalidades de pensiones o anualidades por retiro. Éstas incluyen las anualidades de retiro por edad, 3 L.P.R.A. sec. 766; por años de servicio y de mérito, 3 L.P.R.A. sec. 766(a); por incapacidad ocupacional, 3 L.P.R.A. sec. 769, y por incapacidad no ocupacional, 3 L.P.R.A. sec. 770.

Como se podrá observar, uno de los beneficios concedidos a los empleados públicos es la pensión por incapacidad ocupacional. Ésta constituye **"una de las fuentes de beneficio de mayor importancia para los participantes del Sistema de Retiro de los Empleados del Gobierno."** (Énfasis nuestro.) Ley Núm. 61 de 1 de

---

[4] En Caballero v. Sistemas de Retiro, 129 D.P.R. 146, 163 (1991), hicimos nuestras las expresiones del Diccionario de la Real Academia de la Lengua Española, y definimos el término "jubilar" como acción de "[d]isponer que, por razón de vejez, largos servicios o **imposibilidad**, y generalmente con derecho a pensión, cese un funcionario civil en el ejercicio de su carrera o destino." (Énfasis nuestro.) Véase, Diccionario de la Lengua Española, 20ma 2d. ed. Madrid, Ed. Espasa-Calpe, 2001, T. II, pág. 1325. Igual definición tiene la edición de 1984, citada en Caballero v. Sistema de Retiro, supra.

En virtud del texto antes citado, señalamos que el término "jubilación" es uno amplio, lo cual permite que se utilice para referirnos a pensiones por incapacidad.

julio de 1986, Exposición de Motivos, Leyes de Puerto Rico, 1986, pág. 218. Es por ello que el legislador, como medida cautelar y fiscalizadora, le otorgó al Administrador el poder de investigar periódicamente a los pensionados para determinar el estado de salud y el grado de incapacidad de éstos. En lo aquí pertinente, el Art. 11 de la Ley de Retiro dispone que "[e]l Administrador exigirá que todo pensionado que esté disfrutando de una anualidad por incapacidad se someta periódicamente a un examen que practicará uno o más médicos nombrados por el Administrador para determinar el estado de salud del participante y su grado de incapacidad." De encontrarse que el pensionado se ha recuperado de su incapacidad lo suficiente para trabajar, el participante tendrá derecho a ser reinstalado en cualquier posición en la agencia de la cual se separó por razón de su incapacidad. 3 L.P.R.A. sec. 771.

En 1986, en aras de evitar que el pensionado recibiera los beneficios de la anualidad y continuara trabajando y así garantizar los beneficios de la ley a largo plazo y mantener la solvencia y buen uso del Sistema de Retiro, el Art. 11 de la Ley de Retiro fue modificado **sustancialmente** para prohibir que el participante trabajara en ocupaciones gubernamentales, no gubernamentales o por cuenta propia en las que

devengue una suma igual o mayor al importe de la pensión. La enmienda dispuso lo siguiente:

> Se suspenderá el pago de la anualidad, además, cuando el pensionado comience a devengar cualquier retribución por servicios prestados al Gobierno de Puerto Rico o cuando se dedique a ocupaciones no gubernamentales o por cuenta propia en las que devengue una suma igual o mayor al importe de la pensión. Si la suma devengada fuera menor, tendrá derecho a seguir percibiendo por un año a partir de la fecha en que comience a recibir la retribución, la diferencia entre la compensación que reciba y el monto de la anualidad.[5] Ley Núm. 61 de 1ro. de julio de 1986.

Como el beneficio por incapacidad ocupacional tiene el propósito de compensar al empleado por la pérdida de ingresos al carecer de la capacidad para participar en la fuerza trabajadora, la enmienda presume que cuando el beneficiario se reintegra al mercado de trabajo y genera suficientes ingresos, es porque se ha recuperado de su incapacidad. Dicho en otros términos, la enmienda, sin menoscabar derechos adquiridos, refuerza las garantías a los pensionados y salvaguarda el buen funcionamiento del sistema.

---

[5] Como ya señaláramos, antes de la aprobación de esta enmienda se permitía que el participante laborara en cualquier gestión, siempre que no fuera con el Gobierno de Puerto Rico o con una de sus instrumentalidades.

Cabe destacar, además, que la disposición antes citada al igual que su Exposición de Motivos carecen de expresión legislativa en torno a la retroactividad de la Ley.

## III

El señor Rodríguez obtuvo su pensión en 1974. A esa fecha la Ley de Retiro requería que el pensionado se sometiera periódicamente a exámenes médicos por los doctores designados por la Administración para determinar si el grado de incapacidad que le impedía ejercer sus funciones en el puesto que ocupaba persistía. Si se recuperaba lo suficiente para trabajar, éste tenía derecho a ser reinstalado en la agencia de la cual se había retirado. En aquel entonces, la ley no prohibía que el pensionado laborara en una empresa privada desempeñando funciones distintas a las que realizaba como empleado del gobierno al momento de su incapacidad.

En 1986 la Ley de Retiro fue enmendada para disponer que cuando un pensionado devengare cualquier retribución por servicios prestados a empresa privada, gobierno o por cuenta propia igual o mayor a la suma que recibe, el Administrador tiene la facultad de suspender los pagos de la pensión que esté recibiendo. No cabe duda de que la modificación es una sustancial al sistema de retiro ya que la suspensión es automática sin la necesidad de examen médico. Es bajo la aplicación retroactiva de esta enmienda que la Administración le suspendió la pensión al señor Rodríguez Sierra en 1994.

IV

El Art. 3 del Código Civil, 31 L.P.R.A. sec. 3, dispone que **"[l]as leyes no tendrán efecto retroactivo si no dispusieren expresamente lo contrario. En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior."** (Énfasis nuestro.) Este Tribunal al interpretar esta disposición ha expresado que una enmienda de carácter sustantivo a una ley tiene efecto prospectivo, a menos que expresamente se diga lo contrario y no perjudique derechos adquiridos al amparo de una legislación anterior. López v. South P.R. Sugar Co., 62 D.P.R. 238, 242-243 (1943). Véase, además, Acevedo v. P.R. Sun Oil Co., 145 D.P.R. 752, 769 (1998). En armonía con lo anterior, el Tribunal Supremo de Estados Unidos en Bennett v. New Jersey, 470 U.S. 632, 641 (1985), resolvió que **"[a]bsent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants."** (Énfasis nuestro.)

En Bayrón Toro v. Serra, 119 D.P.R. 605 (1987), en un caso sobre pensiones de retiro, dentro de la doctrina de derechos adquiridos, resolvimos que una vez el empleado se ha retirado, su pensión no está sujeta a

cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro. Aunque nuestras expresiones fueron únicamente en cuanto a las pensiones de retiro y "[a]claramos que no nos manifestamos sobre algún otro tipo de pensión de naturaleza diferente, como podría ser las de rango o mandato constitucional...", no cabe duda que el mismo razonamiento es de aplicación al caso que nos ocupa.[6]

En virtud de todo lo antes expuesto resolvemos que a la luz de la doctrina de derechos adquiridos, una vez el empleado se ha retirado o incapacitado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro. Por consiguiente, la enmienda al Art. 11 de la Ley de Retiro de 1986 no podía ser aplicable a Rodríguez Sierra. Siendo inaplicable dicha enmienda, era irrazonable suspender los pagos de la pensión. El deber de la Administración era someter al pensionado a los exámenes médicos requeridos por ley y, de determinarse que había cesado la incapacidad, continuar entonces con

---

[6]   A modo ilustrativo véase Karnas v. Derwinski, 1 Vet. App. 308, 313 (1991), en el cual se aplicó el mismo razonamiento, pero en cuanto a beneficios de veteranos. Así, por ejemplo, la Corte de Apelaciones de Veteranos de Estados Unidos (United States Court of Appeals for Veterans Claims), resolvió que "[w]here the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to [the] appellant should and we so hold will apply unless Congress provided otherwise or permitted

el proceso para su reubicación.   De otra manera, no podía concluir que hubo pago de lo indebido.

Finalmente, aclaramos que el Art. 26 la Ley de Retiro autoriza expresamente a la Junta a recobrar cualquiera pagos erróneos o indebidamente hechos; disponiéndose que la Junta determinará la forma y las condiciones bajo las cuales se recobrarán dichas cantidades.   Erró, pues, el Tribunal de Circuito al concluir que la Ley de Retiro no delega dicha facultad en el Administrador.

Por los fundamentos expuestos se dicta sentencia revocando la dictada por el Tribunal de Circuito y se devuelve el caso para que se resuelva de forma compatible con lo aquí resuelto.


                              Miriam Naveira de Rodón
                              Jueza Asociada


the Secretary of Veterans Affairs (Secretary) to do otherwise and the Secretary did so."

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Rodríguez Sierra

    Recurrido

        v.                                CC-2000-696

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

    Peticionaria

                               Consolidado

Luis E. Rodríguez Sierra

    Peticionario

        v.                                CC-2000-644

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

    Recurrida

SENTENCIA

San Juan, Puerto Rico a 13 de mayo de 2003

Por los fundamentos expuestos en la Opinión que antecede, se revoca la sentencia dictada por el Tribunal de Circuito y se devuelve el caso para que se resuelva de forma compatible con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita. El Juez Presidente señor Andréu García no interviene. El Juez Asociado señor Fuster Berlingeri no intervino.

Patricia Otón Olivieri

Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Rodríguez Sierra

        Peticionario

            v.                                CC-2000-696

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

        Recurridos

_____

                                        Consolidado

Luis E. Rodríguez Sierra

        Recurrido

            v.                                CC-2000-644

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

        Peticionarios

Opinión del Tribunal emitida por la Jueza Asociada
señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 13 de mayo de 2003

    El 3 de junio de 1972 el Sr. Luis E. Rodríguez
Sierra sufrió un accidente de trabajo mientras laboraba
como guardia de la Policía de Puerto Rico. Como
resultado del accidente se le diagnosticó una miosotis
lumbo sacra crónica y una lesión al nervio mediano de la
extremidad superior izquierda. El Fondo del Seguro del
Estado le concedió una incapacidad de cincuenta por

ciento (50%) en la mano izquierda y veinticinco por ciento (25%) por desfiguración de huesos.

En 1974 la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante Administración), le otorgó a Rodríguez Sierra una pensión por incapacidad ocupacional ascendente a $327.50 mensuales, la cual sería efectiva a partir del **3 de febrero de 1974.** Cabe señalar que dicha pensión fue concedida bajo las condiciones entonces establecidas por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro de Personal del Gobierno del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 761, et. seq., (en adelante Ley de Retiro). Entre las condiciones para continuar disfrutando de los beneficios de la pensión, el participante debía someterse a exámenes médicos periódicamente para determinar su estado de salud y grado de incapacidad. Art. 11 de la Ley de Retiro, 3 L.P.R.A. sec. 771. La Ley entonces, no prohibía, al menos no surgía del texto, el que una persona pensionada por incapacidad pudiera laborar en la empresa privada desempeñando funciones distintas a las que realizaba al momento de su incapacidad.

Así las cosas, el 23 de febrero de 1977 y en cumplimiento con lo requerido por ley, el señor Rodríguez Sierra fue examinado por un médico de la Administración quien determinó que la condición de

incapacidad persistía, por lo que se le notificó que continuaría recibiendo la anualidad indefinidamente. La Administración nunca le requirió otro examen médico.

En **1986,** el Art. 11 de la Ley de Retiro fue enmendado por la Ley Núm. 61 de 1 de julio de 1986. Dicha enmienda autorizaba a la Administración a suspender automáticamente el pago de la pensión por incapacidad sin la necesidad de un examen médico en aquellos casos en los cuales el pensionado estuviese trabajando y devengando un salario igual o mayor al importe de la pensión.

Amparada en esta enmienda, el **15 de febrero de 1994** la Administración le notificó al señor Rodríguez Sierra que le suspendería la anualidad a partir de dicho día porque el resultado de una investigación señalaba que desde 1985 ocupaba el puesto de Director de PROSEE en la Institución Universitaria Ana G. Méndez devengando un salario para el 1993 de $1,825 mensuales en contravención al Art. 11 de Ley de Retiro, según enmendada por la Ley Núm. 61.

Posteriormente, el 15 de mayo de 1994 la Administración le notificó al señor Rodríguez Sierra que había incurrido en cobro indebido de pensión ascendente a la cantidad de $34,609.32 durante el período de 1 de julio de 1986 hasta el 14 de febrero de 1994.

Oportunamente, Rodríguez Sierra apeló esta decisión ante la Junta de Síndicos de la Administración (en

adelante Junta). La Junta confirmó la determinación de la Administración. Después de agotar los trámites administrativos, el señor Rodríguez Sierra presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Alegó que la Ley Núm. 61, en ausencia de expresión legislativa, no podía tener carácter retroactivo ya que, como pensionado, se le estaría privando de derechos adquiridos bajo la ley anterior, lo que a su vez menoscabaría las relaciones contractuales. También impugnó la decisión de la Administración de cobrarle lo alegadamente pagado indebidamente.

El Tribunal de Circuito, mediante sentencia de 30 de junio de 2000, resolvió lo siguiente: (1) que la suspensión de la pensión fue por actos realizados con posterioridad a la vigencia de la Ley Núm. 61, por lo que ello no constituye una aplicación retroactiva de la ley; (2) que las enmiendas efectuadas al Art. 11 de la Ley de Retiro no constituyeron un menoscabo a una obligación contractual ya que no se modificó la obligación de proveer ingresos a aquellos participantes del Sistema de Retiro que estuvieron incapacitados; (3) que el procedimiento adjudicativo que llevó a cabo la Junta cumplió con el debido proceso de ley; (4) que el estatuto no exige al pensionado que devuelva cantidad alguna recibida luego de entrar en vigor la Ley Núm. 61; (5) que la Ley Núm. 61 no autoriza a la Administración a

recuperar cantidad alguna por pensiones pagadas indebidamente y; (6) que los pagos efectuados antes de la suspensión fueron legales, por lo que no hubo pagos erróneos o indebidos.  En vista de lo anterior, el foro apelativo confirmó la decisión de la Junta en cuanto a la terminación de los beneficios por incapacidad y revocó en cuanto a la orden de satisfacer a la Administración los $34,609.32.

Inconforme, el señor Rodríguez Sierra, mediante el recurso CC-2000-696, acude ante nos con el siguiente señalamiento de error:

> Erró el Honorable Tribunal Apelativo al confirmar la determinación de la aplicación retroactiva de la enmienda de 1986 al recurrente [señor Rodríguez Sierra], en violación a la cláusula constitucional de que no se menoscabarán las relaciones contractuales, constituyendo esto, de igual modo, una violación al Debido Proceso de Ley (sustantivo) de Garantía Constitucional.

Igualmente, la Administración, mediante el recurso CC-2000-644, acude ante nos con el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la Administración no tenía autoridad en ley para solicitar el cobro indebido de pensión durante la vigencia de la pensión y antes de la terminación de beneficios.[7]

---

[7] Por estar íntimamente relacionados discutiremos ambos errores en conjunto.

II

La Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro de Personal del Gobierno del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 761, et. seq., creó un sistema de retiro y beneficios denominado "Sistema de Retiros de los Empleados del Gobierno de Puerto Rico y sus instrumentalidades." 3 L.P.R.A. sec. 761.[8] Los fondos de este sistema de retiro se utilizan en provecho de los participantes de su matrícula,[9] esto es, la gran mayoría de los empleados del gobierno estatal, sus dependientes y beneficiarios, para el pago de anualidades por retiro y por **incapacidad**, y beneficios por defunción entre otros. Art. 1 de la Ley de Retiro, 3 L.P.R.A. sec. 761. Es por ello que "[s]e entenderá que todo empleado miembro del Sistema consiente y conviene en que se le hagan los descuentos de su retribución [para fines de retiro]... ." Art. 20, de la Ley de Retiro, 3 L.P.R.A. sec. 780(f). Véase, además, Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1032 (1992).

---

[8] Aclaramos que la Ley de Retiro ha sido enmendada en varias ocasiones. Sin embargo, para propósito de nuestra argumentación utilizaremos las disposiciones vigentes al momento de los hechos.

[9] Participante o miembro se refiere a todo empleado acogido al Sistema de Retiros o que pertenezca a su matrícula. Art. 3 de la Ley de Retiro, 3 L.P.R.A. sec. 763.

> En virtud de dicho consentimiento [y satisfechos los requisitos exigidos por ley], el empleado obtiene un derecho garantizado sobre sus aportaciones y al "jubilarse"[10] [o incapacitarse] tiene *derecho a recibir una anualidad* por cuanto el propósito de la referida legislación es proveerle un ingreso mínimo de subsistencia al empleado jubilado [o incapacitado]. (Énfasis en el original.) Calderón v. Adm. Sistemas de Retiro, supra.

La Ley de Retiro contiene varias modalidades de pensiones o anualidades por retiro. Éstas incluyen las anualidades de retiro por edad, 3 L.P.R.A. sec. 766; por años de servicio y de mérito, 3 L.P.R.A. sec. 766(a); por incapacidad ocupacional, 3 L.P.R.A. sec. 769, y por incapacidad no ocupacional, 3 L.P.R.A. sec. 770.

Como se podrá observar, uno de los beneficios concedidos a los empleados públicos es la pensión por incapacidad ocupacional. Ésta constituye **"una de las fuentes de beneficio de mayor importancia para los participantes del Sistema de Retiro de los Empleados del Gobierno."** (Énfasis nuestro.) Ley Núm. 61 de 1 de

---

[10] En Caballero v. Sistemas de Retiro, 129 D.P.R. 146, 163 (1991), hicimos nuestras las expresiones del Diccionario de la Real Academia de la Lengua Española, y definimos el término "jubilar" como acción de "[d]isponer que, por razón de vejez, largos servicios o **imposibilidad**, y generalmente con derecho a pensión, cese un funcionario civil en el ejercicio de su carrera o destino." (Énfasis nuestro.) Véase, Diccionario de la Lengua Española, 20ma 2d. ed. Madrid, Ed. Espasa-Calpe, 2001, T. II, pág. 1325. Igual definición tiene la edición de 1984, citada en Caballero v. Sistema de Retiro, supra.

julio de 1986, Exposición de Motivos, Leyes de Puerto Rico, 1986, pág. 218. Es por ello que el legislador, como medida cautelar y fiscalizadora, le otorgó al Administrador el poder de investigar periódicamente a los pensionados para determinar el estado de salud y el grado de incapacidad de éstos. En lo aquí pertinente, el Art. 11 de la Ley de Retiro dispone que "[e]l Administrador exigirá que todo pensionado que esté disfrutando de una anualidad por incapacidad se someta periódicamente a un examen que practicará uno o más médicos nombrados por el Administrador para determinar el estado de salud del participante y su grado de incapacidad." De encontrarse que el pensionado se ha recuperado de su incapacidad lo suficiente para trabajar, el participante tendrá derecho a ser reinstalado en cualquier posición en la agencia de la cual se separó por razón de su incapacidad. 3 L.P.R.A. sec. 771.

En 1986, en aras de evitar que el pensionado recibiera los beneficios de la anualidad y continuara trabajando y así garantizar los beneficios de la ley a largo plazo y mantener la solvencia y buen uso del Sistema de Retiro, el Art. 11 de la Ley de Retiro fue modificado **sustancialmente** para prohibir que el participante trabajara en ocupaciones gubernamentales,

En virtud del texto antes citado, señalamos que el término "jubilación" es uno amplio, lo cual permite que

no gubernamentales o por cuenta propia en las que devengue una suma igual o mayor al importe de la pensión. La enmienda dispuso lo siguiente:

> Se suspenderá el pago de la anualidad, además, cuando el pensionado comience a devengar cualquier retribución por servicios prestados al Gobierno de Puerto Rico o cuando se dedique a ocupaciones no gubernamentales o por cuenta propia en las que devengue una suma igual o mayor al importe de la pensión. Si la suma devengada fuera menor, tendrá derecho a seguir percibiendo por un año a partir de la fecha en que comience a recibir la retribución, la diferencia entre la compensación que reciba y el monto de la anualidad.[11] Ley Núm. 61 de 1ro. de julio de 1986.

Como el beneficio por incapacidad ocupacional tiene el propósito de compensar al empleado por la pérdida de ingresos al carecer de la capacidad para participar en la fuerza trabajadora, la enmienda presume que cuando el beneficiario se reintegra al mercado de trabajo y genera suficientes ingresos, es porque se ha recuperado de su incapacidad. Dicho en otros términos, la enmienda, sin menoscabar derechos adquiridos, refuerza las garantías a los pensionados y salvaguarda el buen funcionamiento del sistema.

___

se utilice para referirnos a pensiones por incapacidad.

[11] Como ya señaláramos, antes de la aprobación de esta enmienda se permitía que el participante laborara en cualquier gestión, siempre que no fuera con el Gobierno de Puerto Rico o con una de sus instrumentalidades.

Cabe destacar, además, que la disposición antes citada al igual que su Exposición de Motivos carecen de

III

El señor Rodríguez obtuvo su pensión en 1974. A esa fecha la Ley de Retiro requería que el pensionado se sometiera periódicamente a exámenes médicos por los doctores designados por la Administración para determinar si el grado de incapacidad que le impedía ejercer sus funciones en el puesto que ocupaba persistía. Si se recuperaba lo suficiente para trabajar, éste tenía derecho a ser reinstalado en la agencia de la cual se había retirado. En aquel entonces, la ley no prohibía que el pensionado laborara en una empresa privada desempeñando funciones distintas a las que realizaba como empleado del gobierno al momento de su incapacidad.

En 1986 la Ley de Retiro fue enmendada para disponer que cuando un pensionado devengare cualquier retribución por servicios prestados a empresa privada, gobierno o por cuenta propia igual o mayor a la suma que recibe, el Administrador tiene la facultad de suspender los pagos de la pensión que esté recibiendo. No cabe duda de que la modificación es una sustancial al sistema de retiro ya que la suspensión es automática sin la necesidad de examen médico. Es bajo la aplicación retroactiva de

expresión legislativa en torno a la retroactividad de la Ley.

esta enmienda que la Administración le suspendió la pensión al señor Rodríguez Sierra en 1994.

IV

El Art. 3 del Código Civil, 31 L.P.R.A. sec. 3, dispone que **"[l]as leyes no tendrán efecto retroactivo si no dispusieren expresamente lo contrario. En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior."** (Énfasis nuestro.) Este Tribunal al interpretar esta disposición ha expresado que una enmienda de carácter sustantivo a una ley tiene efecto prospectivo, a menos que expresamente se diga lo contrario y no perjudique derechos adquiridos al amparo de una legislación anterior. López v. South P.R. Sugar Co., 62 D.P.R. 238, 242-243 (1943). Véase, además, Acevedo v. P.R. Sun Oil Co., 145 D.P.R. 752, 769 (1998). En armonía con lo anterior, el Tribunal Supremo de Estados Unidos en Bennett v. New Jersey, 470 U.S. 632, 641 (1985), resolvió que **"[a]bsent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants."** (Énfasis nuestro.)

En Bayrón Toro v. Serra, 119 D.P.R. 605 (1987), en un caso sobre pensiones de retiro, dentro de la doctrina de derechos adquiridos, resolvimos que una vez el empleado se ha retirado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro. Aunque nuestras expresiones fueron únicamente en cuanto a las pensiones de retiro y "[a]claramos que no nos manifestamos sobre algún otro tipo de pensión de naturaleza diferente, como podría ser las de rango o mandato constitucional...", no cabe duda que el mismo razonamiento es de aplicación al caso que nos ocupa.[12]

En virtud de todo lo antes expuesto resolvemos que a la luz de la doctrina de derechos adquiridos, una vez el empleado se ha retirado o incapacitado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro. Por consiguiente, la enmienda al Art. 11 de la Ley de Retiro de 1986 no podía ser aplicable a Rodríguez Sierra. Siendo inaplicable dicha enmienda, era

---

[12] A modo ilustrativo véase Karnas v. Derwinski, 1 Vet. App. 308, 313 (1991), en el cual se aplicó el mismo razonamiento, pero en cuanto a beneficios de veteranos. Así, por ejemplo, la Corte de Apelaciones de Veteranos de Estados Unidos (United States Court of Appeals for Veterans Claims), resolvió que "[w]here the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to [the] appellant should and we so hold will apply unless Congress provided otherwise or permitted

irrazonable suspender los pagos de la pensión. El deber de la Administración era someter al pensionado a los exámenes médicos requeridos por ley y, de determinarse que había cesado la incapacidad, continuar entonces con el proceso para su reubicación. De otra manera, no podía concluir que hubo pago de lo indebido.

Finalmente, aclaramos que el Art. 26 la Ley de Retiro autoriza expresamente a la Junta a recobrar cualquiera pagos erróneos o indebidamente hechos; disponiéndose que la Junta determinará la forma y las condiciones bajo las cuales se recobrarán dichas cantidades. Erró, pues, el Tribunal de Circuito al concluir que la Ley de Retiro no delega dicha facultad en el Administrador.

Por los fundamentos expuestos se dicta sentencia revocando la dictada por el Tribunal de Circuito y se devuelve el caso para que se resuelva de forma compatible con lo aquí resuelto.

Miriam Naveira de Rodón
Jueza Asociada

the Secretary of Veterans Affairs (Secretary) to do otherwise and the Secretary did so."

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Rodríguez Sierra

    Peticionario

       v.                                          CC-2000-696

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

    Recurridos

                               Consolidado

Luis E. Rodríguez Sierra

    Recurrido

       v.                                          CC-2000-644

Administración de los Sistemas de
Retiro de los Empleados del
E.L.A. y la Judicatura

    Peticionarios

SENTENCIA

San Juan, Puerto Rico a 13 de mayo de 2003

    Por los fundamentos expuestos en la Opinión que antecede, se revoca la sentencia dictada por el Tribunal de Circuito y se devuelve el caso para que se resuelva de forma compatible con lo aquí resuelto.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita. El Juez Presidente señor Andréu García no interviene. El Juez Asociado señor Fuster Berlingeri no intervino.

                              Patricia Otón Olivieri
                        Secretaria del Tribunal Supremo