Opinión disidente emitida por el
Juez Asociado Señor Rivera Pérez, a la que se une la Jueza Asociada Señora Fiol Matta.
La mayoría resuelve que la determinación de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, denegando los beneficios de incapacidad ocupacional a la allí peticionaria, merece nuestra deferencia. Al confirmarla, entiende que se trata de una determinación razonable realizada por la agencia en cuestión. Por entender que se comete una gran injusticia y que el criterio administrativo en este caso no puede prevalecer por haber sido rebatida adecuadamente la presunción de corrección, DISENTIMOS.
I
La Sra. Rosa López Echevarría, de 62 años de edad y cuya preparación académica es de un noveno grado de escuela intermedia, trabajó como ayudante de cocinera para el Departamento de Educación de Puerto Rico. Tiene cotizados en el Sistema de Retiro 16.5 años.
Mientras realizaba las labores de su puesto, sufrió un accidente de trabajo y sintió molestias en la pierna derecha, los codos y la cintura. Por ello, acudió a la Corporación del Fondo del Seguro del Estado (Fondo), y luego de la correspondiente evaluación fue diagnosticada con las con *758 diciones siguientes: “right and left epicondilitis”, “right and left tenosinovitis”, “sprain lumbar”, “right knee sprain”, “S/P right and left cts release”. Como resultado de ello, el Fondo le reconoció una incapacidad de un veinte y cinco por ciento (25% F.F.) (diez por ciento por “pérdida mano derecha por la muñeca” y quince por ciento por “pérdida de mano izquierda por la muñeca”). Le reconoció, además, un cinco por ciento (5% F.F.) de incapacidad por “sprain lumbar”.(1)
El 20 de agosto de 1996, la señora López Echevarría solicitó una pensión por incapacidad ocupacional y no ocupacional ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración de los Sistemas de Retiro), al amparo de la Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura (Ley Núm. 447).(2) Ello porque, además de las condiciones diagnosticadas por el Fondo, la señora López Echevarría padece de diabetes mellitus (tipo II), angina de pecho, artritis, “lumbar scoliosis and spondylosis” y “degenerative disc disease L1-L2 and L2-L3”, y fue operada en ambas manos de “carpal tunnel syndrome”. Todo lo anterior, sostuvo, le impedía realizar cualquier tipo de trabajo.
El 16 de diciembre de 1999, la referida solicitud de pensión fue denegada por la Administración de los Sistema de Retiro por entender que, a base de la evidencia médica sometida, la condición médica de la señora López Echevarría no cumplía con los requisitos del Seguro Social. El 26 de enero de 2000, la señora López Echevarria solicitó, sin *759 éxito, la reconsideración del dictamen ante el Administrador de los Sistemas de Retiro.(3)
Entretanto, la Administración del Seguro Social federal declaró a la señora López Echevarría total y permanente incapacitada el 10 de octubre de 1997.
Inconforme con la determinación de la Administración de los Sistemas de Retiro, la señora López Echevarría acudió ante la Junta de Síndicos de dicha Administración para apelar la denegatoria. Sostuvo que, luego de haber trabajado por diecinueve años en el Departamento de Educación, quedó incapacitada de sus manos y no podía hacer ningún tipo de trabajo. Añadió que no podía realizar fuerza alguna con sus manos y que durante las evaluaciones a las que fue sometida se le exigió hacer cosas que no podía hacer, lo que la lastimó.(4)
Luego de varios incidentes procesales, el 19 de julio de 2003, la Junta de Síndicos confirmó la determinación de la Administración de los Sistemas de Retiro. Sostuvo que cada condición de la allí apelante fue evaluada adecuadamente y que los criterios médicos arrojaron un resultado no incapacitante. Añadió que las condiciones de la señora López Echevarría le imponen unas restricciones, pero no a tal punto que le impidan trabajar.(5)
Insatisfecha, la señora López Echevarría acudió en revisión ante el Tribunal de Apelaciones, quien confirmó la resolución recurrida.(6) Sostuvo que la decisión administrativa estuvo fundamentada en evidencia sustancial, por lo que no existía razón para sustituir el criterio de la Administración de los Sistemas de Retiro.
*760 Finalmente, la señora López Echevarría acudió ante nos mediante un recurso de certiorari, señalando los errores siguientes:
Erró el Tribunal de Circuito de Apelaciones al negarse a revisar la Resolución de la junta Síndi[co]s de la Administración de los Sistemas de Retiro de Gobierno por concederle gran consideración y deferencia ya que esta Resolución se basa solamente en prueba documental y pericial; y en cuanto al análisis de este tipo de prueba los Tribunales están en la misma posición que las agencias administrativas.
Erró el Tribunal de Circuito de Apelaciones al no modificar las determinaciones de hechos de la Junta de Síndicos de la Administración de los Sistemas de Retiro de gobierno, ya que éstas no se basan en evidencia sustancial que obre en expediente administrativo, sino que por el contrario, son totalmente contrarias a la prueba obrante en autos.
Erró el Tribunal de Circuito de Apelaciones al sostener la interpretación que hace la Junta de Síndicos del Sistema de Re-tiro de Gobierno de la Ley y el Reglamento, ya que ésta produce resultados inconsistentes, con o contrarios, al propósito de la ley y lleva a la comisión de una injusticia.
Erró el Tribunal de Circuito de Apelaciones al sostener a la Junta de Síndicos de la Administración de los Sistemas de Retiro de Gobierno en su conclusión de que la peticionaria no está incapacitada y que procede su reinstalación sin dar el peso meritorio a la evidencia médica presentada y obrante en los autos de este caso.
Erró el Tribunal de Circuito de Apelaciones al no evaluar la capacidad funcional de la peticionaria para hacer otro trabajo remunerativo, a la luz de su edad, preparación académica, y experiencia de trabajo. Petición de certiorari, págs. 4-5.
II
¿Actuó correctamente el foro intermedio apelativo al confirmar la determinación de la Administración de los Sistemas de Retiro de denegar la pensión por incapacidad ocupacional y no ocupacional solicitada? Concluimos que no. Veamos.
La Ley Núm. 447, supra, es una ley general que establece un sistema de retiro y provee beneficios para la mayoría de los empleados del gobierno estatal. Ésta contiene *761 varias modalidades de pensiones o anualidades por retiro. Entre ellas, las anualidades de retiro por edad, años de servicio y de mérito, incapacidad ocupacional e incapacidad no ocupacional.(7)
Específicamente, la pensión por incapacidad ocupacional y no ocupacional constituye “una de las fuentes de beneficio de mayor importancia para los participantes del Sistema de Retiro”.(8) En el contexto del derecho a pensión de retiro por años de servicio, hemos expresado que dicha pensión tiene un respetable contenido ético y moral, y constituye un seguro de dignidad para el hombre o la mujer que, habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo o convertido en carga de parientes o del Estado.(9)
Respecto a la pensión por incapacidad ocupacional, el Art. 2-107 de la Ley Núm. 447,(10) dispone, en lo pertinente, lo siguiente:
Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:
(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.
(b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.
*762 (c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.
El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud.
Respecto a la incapacidad no ocupacional, el Art. 2-109(11) dispone lo siguiente:
Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, tendrá derecho a una anualidad por incapacidad no ocupacional. El retiro del participante tendrá lugar a petición o solicitud suya o a petición del jefe de su departamento u oficina, mientras esté en servicio el mencionado participante, y de acuerdo con las reglas sobre anualidades por incapacidad provistas en la see. 771 de este título. (Enfasis suplido.)
Además, el Art. 2-111,(12) dispone, respecto a la incapacidad ocupacional y no ocupacional, lo siguiente:
Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador y dicha prueba revele que el participante esté total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado o para trabajar en cualquier empleo retribuido con retribución igual, por lo menos, a la que percibe. El Administrador, según lo crea conveniente y necesario podrá requerir al participante que se someta a exámenes, adicionales con médicos seleccionados por el Administrador. (Enfasis suplido.)
Hemos expresado que “[l]a incapacidad que obligue al retiro del empleado con derecho a la anualidad que auto *763 riza este artículo debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y cualquier otro empleo remunerativo”.(13) Por ello, una incapacidad leve que limita las funciones de un empleado, pero que no le impide llevar a cabo las funciones de su trabajo o de cualquier otro empleo remunerativo, no da base para recibir una pensión según el referido estatuto.(14) El Reglamento General del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades para la Concesión de Pensiones, Beneficios y Derechos a los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades(15) (Reglamento General) describe los criterios que deben regir la evaluación médica sobre las condiciones incapacitantes. El referido Reglamento General incorporó, además, los requisitos establecidos por los Arts. 2-107 y 2-111, supra.(16)
En específico, la Regla 24.4 del referido cuerpo reglamentario, pág. 42, dispone lo siguiente:
Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos (“Adult Listings”) establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y perma
*764 nente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con su sueldo o retribución por lo menos igual a la que esté percibiendo. (Enfasis suplido.)(17)
Los criterios médicos {Adult Listings) a los que se refiere la antes citada Regla 24.4 son aquellos adoptados por las autoridades federales según la Ley de Seguridad Social Federal.(18)
Bajo dicho esquema, al hacer una determinación de incapacidad para llevar a cabo su trabajo, se considera, no solamente si el impedimento es de tal naturaleza que le impide llevar a cabo sus funciones, sino, además, si a la luz de su edad, educación y experiencia de trabajo el empleado no puede llevar a cabo otro trabajo remunerativo.(19)
Según este esquema, cuando la incapacidad sufrida por una persona cumple a cabalidad con los criterios médicos enumerados en el Apéndice I de la Ley de Seguridad Social Federal, la persona se considera incapacitada sin necesidad de hacer referencia a los factores socioeconómicos y vocacionales de edad, educación y experiencia.(20) Sin embargo, si a base de los criterios enumerados en el Apéndice I no se puede llegar a una determinación, entonces se evalúa la capacidad funcional de la persona para seguir lle *765 vando a cabo la tarea que desempeñaba antes. Si no puede realizar la referida tarea, entonces se evalúa su capacidad residual funcional para hacer otro trabajo remunerativo, a la luz de su edad, su educación y su experiencia previa.(21)
El referido esquema de evaluación es compatible con el adoptado en nuestra jurisdicción por la Ley Núm. 447, supra. Así, el cumplimiento o incumplimiento con los criterios médicos enumerados en el Apéndice I de la Ley de Seguridad Social Federal no es necesariamente determinante en la cuestión de si un empleado está o no incapacitado. La referencia a dichos criterios es el primer paso del proceso de evaluación, pero no lo agota. Por ello, si el empleado no cumple con los criterios específicos, entonces hay que determinar si la condición particular que tiene le permite seguir desempeñando las tareas del cargo específico que ocupaba y, de no ser así, si existe algún otro trabajo que podría realizar en el servicio del patrono o en cualquier otro empleo igualmente retribuido, a la luz de su edad, su educación y su experiencia de trabajo.
De esta forma se cumple con el mandato legislativo de la Ley Núm. 447, supra, de evaluar al participante para hacer una determinación de si está total o permanentemente incapacitado e imposibilitado para cumplir con los deberes de cualquier cargo que su patrono le haya asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual al que esté percibiendo.
Por otro lado, y al interpretar la Ley del Sistema de Compensaciones por Accidentes de Trabajo,(22) hemos ex-presado que, aunque la determinación de lo que constituye una incapacidad para realizar cualquier trabajo remune *766 rado no es una tarea fácil, ello no significa que “el obrero tenga que estar tan impedido o inhabilitado físicamente, o que tenga una condición de salud tan ruinosa que su estado no le permita ninguna actividad, excepto mantenerse vivo”.(23) Allí expresamos que, aunque una persona fuera capaz de realizar parte de un empleo, “desde el punto de vista legal, se le puede considerar como totalmente inhabilitada si no puede realizar aquellos aspectos sustanciales y básicos de trabajo, o sea, que si los servicios que puede prestar son tan limitados en calidad, cantidad o en cuanto a su condición de confiables de modo que no hay un mercado o demanda para ellos, puede considerarse a la persona como totalmente incapacitada”.(24)
Finalmente, hemos expresado que las leyes que crean derechos al disfrute de pensiones se deben interpretar liberalmente a favor del beneficiario, a fin de que se cumpla con el propósito reparador para las cuales fueron aprobadas.(25) Esa es la razón de ser de la norma jurisprudencial a los efectos de que la fuerza y el efecto de estas leyes no debe conformarse estrictamente a los términos literales del estatuto.(26)
Además, la interpretación y aplicación de las leyes debe hacerse a tono con el propósito social que las inspira y sin desvincularlas del problema humano que persiguen. Al interpretarlas, debe tener preeminencia la realidad humana de la vida, no la abstracción de reglas eternas e inmutables.(27)
En este caso, luego de evaluar la evidencia presentada, la Junta de Síndicos confirmó la determinación de la Administración de los Sistemas de Retiro y denegó los bene *767 ficios de pensión por incapacidad solicitados. Ello por en-tender que la condición de la señora López Echevarría había sido evaluada adecuadamente y que la lista de criterios médicos arrojó un resultado no incapacitante. Dicha determinación fue sostenida por el foro intermedio apelativo.
La mayoría de este Tribunal entiende que el criterio de la referida agencia, sostenido por el foro intermedio apelativo, no puede ser sustituido por nuestro criterio. No estamos de acuerdo. Un cuidadoso análisis del expediente ante nos y de la evidencia contenida en éste nos convence de que tanto la Administración de los Sistemas de Retiro como la Junta de Síndicos, actuaron incorrectamente al evaluar la evidencia médica a la luz de los factores que deben guiar su determinación.
En el caso ante nos, la señora López Echevarría solicitó una pensión por incapacidad ocupacional y no ocupacional por sufrir de las condiciones siguientes: “right and left epicondilitis”, “right and left tenosinovitis”, “sprain lumbar”, “right knee sprain”, “S/P right and left cts release”, Diabete Mellitas (Tipo II), angina de pecho, artritis, “lumbar scoliosis and spondylosis” y “degenerative disc disease L1-L2 and L2-L3”, y fue operada en ambas manos de “carpal tunnel syndrome”.
Sin embargo, la Administración de los Sistemas de Re-tiro concluyó que su “condición médica de recurrente [sic] no llena los criterios del listado del SEGURO SOCIAL”, y denegó la pensión solicitada. Apéndice de la Petición de certiorari, pág. 22.
Posteriormente, y al confirmar la determinación realizada por la Administración de Sistemas de Retiro, la Junta de Síndicos concluyó lo siguiente:
“No obstante, la evidencia que surge de dicho expediente tiende a indicar que cada condición fue analizada adecuadamente por lo que los listados de criterios médicos arrojaron un resultado no incapacitante. Estamos completamente de acuerdo con que el análisis de cada condición en particular, ninguna de ellas por sí solas incapacitan al apelante. Dichas *768 condiciones no son de tal severidad en las que podríamos identificar que una de ellas especialmente le incapacita para el trabajo. Los reportes médicos y resultados de laboratorio concluyen sin lugar a dudas que las condiciones no son de tal severidad que incapacitan a la apelante. Ciertamente las condiciones le imponen unas restricciones a la apelante, pero no a tal punto que no le permitan trabajar.” (Enfasis suplido.)
Por todo ello, concluyó que las condiciones de la apelante no igualaban los listados médicos siguientes: 4.03, 9.08 A, 1.05-C-1-2, 1.09 AC.(28)
Sin embargo, al evaluar el pedido de la señora López Echevarría entendemos que no se evaluó el impacto que, en conjunto, tienen las limitaciones resultantes de las condiciones que padece la señora López Echevarría. Sencillamente, y como si se tratara de una determinación mecánica, la Junta de Síndicos limitó su análisis a determinar si cada condición cumplía con la lista de criterios médicos y arrojaba un resultado incapacitante. Sin embargo, no mencionó qué tipo de trabajo puede realizar la señora López Echevarría.
Adviértase, que el Reglamento General no dispone que para hacer una determinación de incapacidad, las condiciones de salud reportadas deben igualar estos listados, como si se tratara de un análisis mecánico. Al contrario, dispone que si de la evidencia médica que consta en el expediente y en conformidad con la lista de criterios médicos {Adult Listings), no se pudiese determinar con certeza la incapacidad, se podrán hacer otros estudios para esa determinación. También exige a los técnicos hacer un análisis de la evidencia médica para llegar a una determinación de incapacidad. Es decir, la referencia a dichos listados representa sólo el primer paso del proceso de evaluación.
En virtud de ello, si la señora López Echevarría no cumplía con los criterios de la lista, evaluando conjuntamente sus padecimientos, habría que determinar si la condición *769 particular que tiene le permite seguir desempeñando las tareas del cargo específico que ocupaba y, de no ser así, si existe algún otro trabajo que podría realizar en el servicio del patrono o en cualquier otro empleo igualmente retribuido, a la luz de su edad, educación y experiencia de trabajo.
Contrario a lo determinado por la Junta de Síndicos, la señora López Echevarría sufre de una serie de condiciones que evaluadas a la luz de los factores que deben guiar la referida determinación de incapacidad, nos permiten concluir que cualifica para la pensión solicitada. Adviértase que se trata de una señora de 62 años de edad, con una preparación académica de un noveno grado de escuela intermedia, y que ha dedicado gran parte de su vida a trabajar como ayudante de cocinera. Además de ello, sufre de una serie de condiciones que le imposibilitan cumplir con los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo.(29)
Es decir, aunque del expediente no es posible concluir que dichos listados hayan sido satisfechos, la totalidad de las circunstancias de la señora López Echevarría nos permiten concluir que es acreedora a la pensión por incapacidad ocupacional y no ocupacional que reclama. Entendemos que, luego de considerar los factores antes mencionados, la señora López Echevarría está totalmente incapacitada. Es decir, ella no puede realizar aquellos aspectos sustanciales y básicos de trabajo y los servicios que puede prestar son tan limitados en calidad, cantidad o en cuanto a su condición de confiables de modo que no hay un mercado o demanda para ellos.
*770 Lo anterior no sólo es cónsono con la interpretación liberal que debe regir al interpretar las leyes que crean derechos al disfrute de pensiones, sino que, además, reconoce la preeminencia que tiene la realidad humana de la vida al interpretar estatutos como el presente. De este modo, además, cumplimos con el propósito social que persiguió el legislador al aprobar una de las fuentes de beneficio de mayor importancia para los participantes del Sistema de Retiro.
Finalmente, no hay duda, como sostiene la Mayoría, que la interpretación que, de un estatuto hace la agencia administrativa encargada de su cumplimiento merece, de ordinario, deferencia. Ahora bien, cuando la interpretación que del estatuto hace la agencia administrativa produce, como en este caso, resultados incompatibles con, o contrarios al, propósito de la ley o lleva a la comisión de injusticias, el criterio administrativo no puede prevalecer. Es por ello que los tribunales, como últimos intérpretes de la ley, están autorizados para revisar las decisiones administrativas y, si es necesario, revocarlas.(30)
III
Por los fundamentos antes expuestos, revocaríamos la sentencia recurrida y ordenaríamos a la Junta de Síndicos que conceda a la señora López Echevarría la pensión por incapacidad ocupacional y no ocupacional solicitada.

 Apéndice de la Petición de certiorari, pág. 49. Luego de una vista celebrada ante la Comisión Industrial, ésta resolvió “[a]umentar la incapacidad en este caso a la pérdida de un veinte por ciento (20%) de las funciones fisiológicas por pérdida de la mano derecha por la muñeca y aumentar la incapacidad por pérdida de un quince por ciento (15%) de las funciones fisiológicas por la mano izquierda por la muñeca ...”. Otorgó, además, una incapacidad de un cinco por ciento de las funciones fisiológicas por pérdida de la pierna derecha por amputación en o más abajo de la rodilla con muñón satisfactorio. Apéndice de la Petición de certiorari, págs. 176-177 y 243.

 Ley Núm. 447 de 15 de mayo de 1951 (3 L.P.R.A. see. 761 et seq.), según enmendada.

 Apéndice de la Petición de certiorari, págs. 62-63.

 íd., pág. 72.

 íd., pág. 247.

 El Juez Brau Ramírez disintió sin opinión escrita.

 3 L.P.R.A. secs. 766, 766(a), 769 y 770, respectivamente.

 Rodríguez v. Retiro, 159 D.P.R. 467 (2003).

 Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372 (1985); Román Mayol v. Tribunal Superior, 101 D.P.R. 807 (1973).

 3 L.P.R.A. see. 769.

 3 L.P.R.A. sec. 770.

 3 L.P.R.A. sec. 771.

 Sánchez Nieves v. Adm. Sist. Retiro, supra, pág. f376.

 íd.

 Reglamento Núm. 4930, Departamento de Estado, 26 de mayo de 1993.

 Véase las Reglas 23-25 del Reglamento General del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades para la Concesión de Pensiones, Beneficios y Derechos a los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, Reglamento Núm. 4930, Departamento de Estado, 23 de mayo de 1993, págs. 40-44 (Reglamento General).

 Al referirse a las pensiones por incapacidad no ocupacional, la Regla 25.4 del Reglamento General, supra, contiene un lenguaje casi exacto al antes citado. Sin embargo, su última oración dispone lo siguiente: “[s]e considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo en el servicio activo." (Énfasis suplido.) Regla 25.4 del Reglamento General, supra, págs. 43-44.

 Específicamente, el Reglamento General define listado de criterios médicos como el Apéndice I (Adult Listings) de los listados que contienen los criterios médicos para determinar las incapacidades (Social Security Regulations: Rules for Determining Disability), aprobados bajo las disposiciones del Titulo II de la Ley Federal de Seguridad Social, aprobada el 14 de agosto de 1935, Capítulo 531, 49 Stat. 620, oficialmente conocida como Ley de Seguridad Social, según enmendada.

 Véase 42 U.S.C.A. sec. 423(d).

 Véase 20 C.F.R. sec. 404.1520(d).

 Véase 20 C.F.R. sec. 404.1520(e) y (f).

 Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 et seq.), según enmendada. La referida ley tiene un lenguaje similar a la ley que nos ocupa para describir la incapacidad total y permanente. Es decir, las define como aquellas “lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajo u ocupaciones remunerativas”. 11 L.P.R.A. see. 3.

 Véase Rodríguez Ortiz v. Comisión Industrial, 90 D.P.R. 764, 773 (1964).

 íd., pág. 772.

 Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020 (1992); Sánchez v. A.S.R.E.G.J., supra; In re Castro y Torres Braschi, 73 D.P.R. 564 (1952).

 Calderón v. Adm. Sistemas de Retiro, supra, pág. 1034.

 íd.

 Apéndice de la Petición de certiorari, pág. 247.

 por mencionar un ejemplo, y respecto a su condición en las manos, el doctor que evaluó a la señora López Echevarría concluyó que ésta debía evitar funciones repetitivas de las manos, evitar levantar más de tres libras, evitar estar de pie prolongadamente o caminar. Expresó, además, que la condición en sus manos no anticipaba mejoría.

 Calderón v. Adm. Sistemas de Retiro, supra.