# 2009 DTA 115

**TRIBUNAL DE APELACIONES
REGIONAL JUDICIAL DE SAN JUAN
PANEL IV**

MARIA DEL P. MELÉNDEZ CASTRO
Apelante-Recurrente
v.

ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL E.L.A. DE PUERTO RICO Y LA JUDICATURA
Apelada-Recurrida

Núm. KLRA-2009-00138

San Juan, Puerto Rico, a 14 de agosto de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Coll Martí y Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La señora María del Pilar Meléndez nos solicita que revoquemos una resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Judicatura (Junta de Síndicos), que le denegó una pensión por incapacidad ocupacional y no ocupacional.

Por entender que no se cometió el error señalado, se confirma la determinación de la Junta de Síndicos.

### I

La señora María del Pilar trabajó como Analista de Recursos Humanos para la Corporación del Fondo del Seguro del Estado (F.S.E.) por un transcurso de 13 años hasta el 1 de junio de 2003, cuando fue cesanteada por incapacidad ocupacional. La señora María del Pilar tiene 48 años y cotizó 12.75 años de servicio para la Administración de Retiro.

La señora María del Pilar sufrió tres accidentes que fueron compensados bajo la Ley del Sistema de Compensaciones por Accidentes en el Trabajo, Ley 45 del 18 de abril de 1935, 11 L.P.R.A. secs. 1 *et seq*. El F. S. E. evaluó la reclamación y le otorgó a la señora María del Pilar un 100% de incapacidad y la compensó. La señora María del Pilar también recibió los beneficios de incapacidad de la Administración de Seguro Social.

Acudió la señora María del Pilar ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración de Retiro) y solicitó los beneficios de incapacidad por las condiciones ocupacionales y no ocupacionales que padecía.

La Administración de Retiro, por su parte, evaluó las condiciones físicas diagnosticadas que el F.S.E. relacionó al trabajo **[1]** y unos diagnósticos no relacionados. **[2]**

La Administración de Retiro denegó la solicitud por considerar que la señora María del Pilar estaba capacitada para desempeñar labores en el servicio público. Inconforme con lo determinado, la señora María del Pilar solicitó reconsideración en febrero de 2006, y en marzo de ese mismo año, la Administración se reafirmó en la denegatoria de los beneficios solicitados.

La señora María del Pilar presentó un recurso de Apelación ante la Junta de Síndicos en abril de 2006. Luego de varios incidentes procesales, la Junta de Síndicos celebró vista administrativa el 6 de mayo 2008 y emitió una resolución el 9 de diciembre de ese mismo año en la cual confirmó la determinación apelada.

En su resolución, la Junta de Síndicos incluyó una lista de la prueba médica obrante en el expediente, entre la que se encontraba lo siguiente:

"a. MRI – 15 de febrero de 2001 – left shoulder – "Impression: normal."

b. MRI – 15 de febrero de 2001 – cervical spine – "Impression: Degenerative OC changes at the C5 – C6 interspace"

c. Holter report – 6 de febrero de 2002 – "Impression: normal"

d. Stress test – 12 de febrero de 2002 – "Impression: normal"

e. EMG – NCV – 23 de septiembre de 2004 – "Impresión: CTS (R)."

........".

Evaluación Neurológica - 2 de noviembre de 2005 - Dr. Héctor I. Cases - "Paciente con capacidad para sentarse, pararse, caminar, acostarse y levantarse de la mesa, las últimas 2 con dificultad. Sistema motor: Sin movimientos involuntarios. Sin atrofias o fasciculaciones. Buen tono. Disminución en la fuerza de agarre, 4/5 bilateral. El resto del examen fue normal. Sensorial: Disminución en la sensación L5-S1 dermatomo, bilateral. Reflejos: Superficiales y normales. Reflejos normales plantares y abdominales. Sin reflejos patológicos. Disminuidos los reflejos Aquileanos. Extremidades: Tinnel positivo bilateral. Fuerza de agarre bilateral. Sin atrofias ni fasciculaciones. Disminución en la destreza usando las manos (dexterity). Cuello: Sin hinchazón ni deformidades. Espasmo cervical moderado con disminución de los arcos de movimiento (ROM). Espalda: Sin hinchazón ni deformidades. Espasmo muscular moderado lumbosacral. Positivo el levantamiento de la pierna (straight leg raising), bilateral a 30 grados. Flexión – extensión 30 grado; flexión lateral 15 grados"

Revisión Médica de Expediente – 20 de enero de 2006 - Dr. Yarima Marccuci, Médico Asesora - "No llena ni iguala criterios 1.13 ni 1.14 para IO. Tampoco llena ni iguala criterios 1.12, 1.13 ni 11.02 para INO."

........

A. Informe psiquiátrico – 1 de marzo de 2005 - Dr. Carlos O. Pérez Cortés - "La vio por primera vez el 21 de enero de 2004 y luego de la misma, en visitas mensuales. Las primeras visitas asistió sola, pero desde marzo de 2004 en adelante llega a la oficina acompañada de su hermana o su hija. Pensamiento lógico, coherente y relevante. Sin evidencia de desórdenes preceptúales, obsesiones o compulsiones. Niega ideas suicidas u homicidas. Afecto depresivo. Orientada en persona, lugar y tiempo. Atención pobre. Concentración regular. Funciones intelectuales en conformidad con su trasfondo académico. Juicio pobre. Presenta episodios de pobre control de impulsos en situaciones del diario vivir. La introspección buena. No realiza tareas del hogar. Pasa la mayor parte del tiempo en cama o viendo la televisión. Función social mínima. Incapaz de tolerar el estrés aun con medicación. Continúa con episodios de marcada irritabilidad. Incapaz de mantener el foco de atención por

más de 10 a 15·minutos. Sin historial de ataques de pánico. Diagnóstico: Depresión mayor recurrente con rasgos psicóticos. Con capacidad para manejar bienes."

B. Informe psiquiátrico – 27 de mayo de 2005 - Dr. Carlos O. Pérez Cortés – "Sin historial de hospitalización psiquiátricas. Asiste acompañada de su hermana o su hija a la oficina. Actividad psicomotora disminuida. Pensamiento lógico, coherente y relevante. Sin desórdenes preceptúales, obsesiones o compulsiones. Niega ideas suicidas u homicidas. Afecto deprimido. Orientada en las tres esferas. Memorias pobre. Juicio pobre. Introspección buena. Atención y concentración pobre. Funcionamiento social: pobre envolvimiento con la familia y capacidad para manejar situaciones familiares y nuevas situaciones. Pobre concentración y persistencia en cualquier tarea. Sin historial de ataques de pánico. Sin capacidad para manejar sus bienes."

C. Revisión Médica de Expediente – 8 de agosto de 2005 - Dr. Ramón Nevares Font - "Se examina la evidencia médica de forma longitudinal. Se determina que la evidencia médica no alcanza ni iguala la severidad necesaria para cumplir con los requisitos de los listados 11.03, 11.04, ó 11.06. Se recomienda denegar INO por condición emocional."

La Junta de Síndicos concluyó en su resolución que, conforme a la evidencia presentada, la evaluación del expediente y el testimonio de la señora María del Pilar, las condiciones que aquejaban a la señora María del Pilar no constituían impedimento que la hicieran acreedora de los beneficios de incapacidad conforme a la Ley 447, del 15 de mayo de 1951, según enmendada, 3 L.P.R.A. secs. 761 *et seq.*

Inconforme con la determinación de la Junta de Síndicos, acude ante nos la señora María del Pilar y aduce que erró dicho organismo al no otorgarle los beneficios de incapacidad ocupacional o no ocupacional, pues no tomó en consideración las condiciones orgánicas y emocionales por las que el F. S. E. y el Seguro Social le otorgaron incapacidad total y permanente.

Examinemos el derecho aplicable en el caso que nos ocupa.

## II

### 1. El Sistema de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico

La Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, Ley 447, *supra*, provee beneficios de retiro para la gran mayoría de los empleados públicos y contiene varias modalidades de pensiones o anualidades por retiro. *Rodríguez v. Retiro*, 159 D.P.R. 467, 473 (2003); *Calderón v. Adm. Sistemas de Retiro,* 129 D.P.R. 1020, 1031 (1992).

Entre los derechos que proporciona la Ley 447, *supra*, se encuentran los beneficios de incapacidad ocupacional o no ocupacional. Así pues, esta Ley establece las circunstancias bajo las que un participante del sistema de retiro puede ser acreedor de dichos beneficios. A tales efectos, la Ley 447, *supra*, dispone, en lo pertinente, que todo participante del sistema de retiro que quede incapacitado para el servicio público a raíz de una condición que se origine por causa del empleo y surja en el curso del mismo, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:

"(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante *conforme a los criterios que mediante reglamento fije el Administrador.*

........

(c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del

trabajo o que sea inherentemente relacionado al trabajo o empleo." (Énfasis suplido) 3 L.P.R.A. sec. 769.

En lo relacionado a la incapacidad no ocupacional, la Ley Num. 477, *supra,* en la sec. 770, dispone que todo participante del sistema de retiro tendrá derecho a una anualidad si tiene, por lo menos, 10 años de servicios acreditados, se inhabilitare para el servicio debido al estado mental o físico y, además, estuviese por esta razón, incapacitado para cumplir con los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado.

Tanto para los beneficios por incapacidad ocupacional como la no ocupacional, la Ley 447, *supra,* establece que *a los fines de una anualidad*:

"[S]e considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica *conforme a los criterios que mediante reglamento fije el Administrador* y dicha prueba revele que el participante está imposibilitado para cumplir *los deberes de cualquier cargo* que en el servicio del patrono se le hubiere asignado."

El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico". (Énfasis suplido) 3 L.P.R.A. sec. 771.

Para interpretar e implementar la normativa establecida por la Ley 477, *supra,* entre otras, la Administración de Retiro aprobó el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, 4930 de 25 de junio de 1993. Este Reglamento 4930, *supra,* fue derogado parcialmente por el Reglamento para la Concesión de Pensiones por Incapacidad a los Participantes de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura, Reglamento 6719 de 7 de noviembre de 2003. Aún cuando el Reglamento 6719, *supra,* mantiene, en esencia, las disposiciones del Reglamento anterior, eliminó toda referencia a los *listings* o criterios de la Administración del Seguro Social e incluyó en su Apéndice un "Manual para la Evaluación de Incapacidad" en el que se encuentra una lista de criterios médicos utilizados para determinar incapacidad.

El Reglamento 6719, *supra,* Artículo 5, adopta una nueva definición de criterios médicos, refiriéndose a éstos como "las normas adoptadas por el(la) Administrador(a) para determinar incapacidad, contenidas en el Reglamento y en su Manual para la Evaluación de Incapacidad de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura". Establece que la incapacidad se refiere a la inhabilidad o imposibilidad del participante para cumplir los *deberes de cualquier cargo* en el servicio del patrono que se le hubiere asignado, conforme a los criterios médicos establecidos por el Administrador en el Manual para la Evaluación de Incapacidad de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. Reglamento 6719, *supra,* Artículo 5. Explica que la incapacidad total y permanente es cuando la condición médica del participante es de tal naturaleza, que no se espera recuperación alguna, conforme los criterios médicos establecidos por el Administrador en el Manual para la Evaluación de Incapacidad. Reglamento 6719, *supra,* Artículo 5.

Como información general, el Manual para la Evaluación de Incapacidad que alude el Reglamento 6719, *supra,* establece que la Administración de Retiro un participante se considerará incapacitado cuando la incapacidad se sustente con *suficiente prueba médica,* conforme a los criterios establecidos en este manual, "que revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado". Manual para la Evaluación de Incapacidad, Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura, pág. 1. Además, establece que se considerará una incapacidad como total y permanente, cuando las condiciones que lo incapacitan sean de tal naturaleza, que no

se espere recuperación alguna. *Id.*

En lo referente a la evidencia médica aceptable, el Manual para la Evaluación de Incapacidad establece que será la presentada por las fuentes de tratamiento del que reclame, además de todo estudio, resultado de laboratorio o examen mental concerniente a las alegaciones del reclamante. Manual para la Evaluación de Incapacidad, *supra,* pág.1. Enfatiza que las opiniones o decisiones de incapacidad emitidas por otras fuentes, no obligan a la Administración a otorgar una incapacidad. *Id.*

Ahora bien, nuestro ordenamiento jurídico ha establecido que las leyes con propósitos remediales, como lo son las pensiones de retiro de empleado públicos, deben interpretarse liberalmente a favor del beneficiario. *Sanfiorenzo v. Adm. Sistemas de Retiro,* 138 D.P.R. 94, 101 (1995). Sin embargo, la incapacidad que obligue al retiro del empleado público con derecho a la anualidad debe ser de tal naturaleza que le inhabilite realizar las funciones de su empleo o cualquier otro empleo remunerativo. *Padín Medina v. Adm. Sist. Retiro,* **2007 J.T.S. 151**; 171 D.P.R. ___ (2007); *Sánchez v. A.S.R.E.G.J.,* 116 D.P.R. 372, 376 (1985).

## 2. La revisión judicial de las determinaciones administrativas

Es norma reiterada en nuestro ordenamiento jurídico que las determinaciones de las agencias administrativas merecen gran respeto y consideración judicial, y sus decisiones se presumen correctas. *Castillo v. Depto. del Trabajo,* 152 D.P.R. 91, 97 (2000); *Costa, Piovanetti v. Caguas Expressway,* 149 D.P.R. 881, 889 (1999); *Asoc. Médica de P.R. v. Cruz Azul,* 118 D.P.R. 669, 978 (1987).

Como se ha señalado en numerosas ocasiones, las conclusiones de derecho de las agencias administrativas pueden ser revisadas por el Tribunal en todos sus aspectos. *P.R.T.C. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269, 282 (2000). Esto no significa que los tribunales puedan descartar libremente las conclusiones e interpretaciones de las agencias administrativas. Los tribunales deben brindar deferencia a las interpretaciones que las agencias efectúan con relación a la ley que administran, pues se presume que éstas poseen un conocimiento especializado en los asuntos que le fueron encomendados. *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85, 109-110 (1997).

La revisión judicial de las decisiones administrativas se limita a determinar si la agencia ha actuado de manera arbitraria o ilegal, o de forma tan irrazonable, que su actuación constituya un abuso de discreción. *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263, 280 (1999); *Franco v. Dpto. de Educación,* 148 D.P.R. 703, 709 (1999).

## III

Examinemos los planteamientos de la señora María del Pilar a la luz del derecho positivo aplicable.

La señora María del Pilar aduce como único error que la Junta de Síndicos no tomó en consideración todas las condiciones orgánicas y emocionales por las cuales el F.S.E. y la Administración del Seguro Social le otorgaron una incapacidad total y permanente.

Para los fines del beneficio de una anualidad por incapacidad ocupacional y también por incapacidad no ocupacional, la Ley 447, *supra,* establece que se considera incapacitado un participante "cuando la incapacidad esté sustentada con suficiente prueba médica *conforme a los criterios que mediante reglamento fije el Administrador*" y, además, que la prueba revele que el participante "está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado." 3 L.P.R.A. sec. 771. Así pues, el Administrador tendrá la potestad de fijar los criterios que se tomarán en consideración en lo concerniente a la prueba médica necesaria para sustentar la incapacidad. A tono con esta ley, el Reglamento 6719, *supra,* Artículo 5, estipula la definición de "criterios médicos" como las normas que adopta el Administrador para determinar incapacidad, contenidas en el Reglamento y el Manual para la Evaluación de Incapacidad.

Ahora bien, según el Manual para la Evaluación de Incapacidad, un participante de retiro se considerará incapacitado cuando la incapacidad se sustente con *suficiente prueba médica*, conforme a los criterios que en él se establecen y "que revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado". Manual para la Evaluación de Incapacidad, *supra, pág.* 1. Además, establece que se considerará una incapacidad como total y permanente, cuando las condiciones que lo incapacitan sean de tal naturaleza, que no se espere recuperación alguna. *Id.*

En lo aquí pertinente, el Manual para la Evaluación de Incapacidad establece que la evidencia médica aceptable para los fines de evaluar la incapacidad será la presentada por las fuentes de tratamiento del que reclame, además de todo estudio, resultado de laboratorio o examen mental concerniente a las alegaciones del reclamante. El Manual para la Evaluación de Incapacidad también enfatiza que las *opiniones o decisiones de incapacidad emitidas por otras fuentes, no obligan a la Administración a otorgar incapacidad.* Manual para la Evaluación de Incapacidad, *supra, pág.* 1. Por lo que las determinaciones de incapacidad de otras fuentes como lo sería el Seguro Social o el Fondo del Seguro del Estado no obligan a la Administración de Retiro a otorgar una incapacidad, sino que más bien se evaluarán los criterios dispuestos en el Manual para la Evaluación de Incapacidad conforme a la evidencia médica aceptable presentada por el que reclama el beneficio.

Ahora bien, la prueba médica sobre las condiciones orgánicas de la señora María del Pilar, refleja que la paciente tiene capacidad para sentarse, pararse, caminar, acostarse y levantarse de la mesa de examen, las dos últimas con algún grado de dificultad. La evaluación médica estableció que la señora María del Pilar tiene un sistema motor sin movimientos involuntarios, ni atrofias o fasciculaciones, con buen tono. Sin ataxia, esto es sin descoordinación en el movimiento de las partes del cuerpo y aunque la capacidad para el agarre en cuanto a las manos está limitada, la fuerza en esta parte es de 4/5, lo que se considera adecuada.

De la prueba médica psiquiátrica surge que la señora María del Pilar no ha tenido hospitalización psiquiátrica alguna, no ha tenido alucinaciones, y está orientada en las tres esferas, con pensamiento lógico, coherente y relevante, maneja su automóvil, hace la compra, maneja la cuenta bancaria, vive con su hija, yerno y nieto con quien se lleva bien.

Evaluados los criterios médicos que se establecen en el Manual de Evaluación de Incapacidad para determinar si procedía la reclamación de la señora María del Pilar, **[3]** los documentos que obran en el expediente y la determinación realizada por la Junta de Síndicos al denegar la pensión solicitada, se desprende que los informes médicos y la evidencia sometida fue considerada al momento de evaluar la elegibilidad de la señora María del Pilar para los beneficios de una pensión y que no se logró establecer que la señora María del Pilar estuviera privada de cumplir con los deberes de cualquier cargo que en el servicio del patrono le pudiera ser asignado ni demostrar que se encuentra incapacitada para realizar cualquier otro empleo remunerativo.

La resolución emitida por la Junta de Síndicos discutió y evaluó las condiciones orgánicas y las emocionales que alegó la señora María del Pilar bajo los criterios de severidad establecidos en el Manual de Evaluación, conforme lo dispuesto en el Reglamento 6719, *supra*, y a tono con la Ley 447, *supra*. El alegato de la señora María del Pilar se reduce a argumentar que cumplía con todos los requisitos establecidos por la Administración de Retiro para obtener los beneficios solicitados. Sin embargo, la señora María del Pilar no presenta prueba obrante en el expediente administrativo que reduzca o menoscabe el valor probatorio de la evidencia médica tomada en cuenta por la Junta de Síndicos, al punto que no sea posible concluir que su determinación fue razonable.

Conforme a la norma jurídica vigente en nuestro ordenamiento, la determinación de la Junta de Síndicos se presume correcta y nos merece gran deferencia. Procede confirmar la decisión administrativa ante la ausencia de evidencia que menoscabe tal determinación y que demuestre que la agencia actuó arbitraria o ilegalmente, o de manera tan irrazonable que su actuación constituya un abuso de discreción.

## IV

Por los fundamentos antes expuestos, se confirma la decisión administrativa.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 115

**1.** En el expediente se alude a las siguientes condiciones: CTS bilateral S/P cirugía, Síndrome lunar bilateral, esguince de hombros bilateral, esguince cervical bilateral, esguince de codos bilateral, S/P left CTS release, esguince de mano derecha, de Quervains disease mano derecha, S/P PO de Quervains surgery, S/P OP CTS derecho.

**2.** En el expediente se alude a las siguientes condiciones, fractura de clavícula izquierda, contusión en el cráneo, tórax, hombro izquierdo y condición emocional.

**3.** Los criterios descritos y detallados en el Manual para la Evaluación de Incapacidad, *supra,* bajo los cuales se evaluó a la señora María del Pilar de naturaleza orgánica relacionada con el sistema músculo esqueletal y el sistema neurológico fueron: 1.12 Fractura de una extremidad superior no consolidada; 1.13 Lesión al tejido blando de una extremidad inferior; 10. 14 Neuropatías periféricas con desorganización de la función motora conforme lo descrito en el criterio 10.04 B. Manual para la Evaluación de Incapacidad, *supra,* 10, 64 y 66. En relación a los criterios utilizados para la evaluación de naturaleza psicológica, fueron utilizados los criterios de trastorno mental: 11.04 Trastorno afectivo y 11.06 Trastorno relacionado a la ansiedad. Manual para la Evaluación de Incapacidad, *supra,* págs. 82-84 y págs. 85-86.