Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| CARMEN M. PARRILLA GORDON<br><br>Recurrente<br><br>v.<br><br>JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO<br><br>Recurrida | KLRA202200301 | REVISIÓN JUDICIAL procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Caso Núm.: 2022-0002<br><br>Sobre: Cómputo de pensión |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón[1], la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2023.

Comparece la señora Carmen Parrilla Gordon ("señora Parrilla Gordon" o "la Recurrente") mediante *Revisión de Decisión Administrativa,* presentada el 8 de junio de 2022. Nos solicita que revoquemos una *Resolución* emitida el 27 de abril de 2022, notificada el 9 de mayo de 2022, por la Junta de Retiro del Gobierno de Puerto Rico ("Junta de Retiro" o "agencia recurrida"). Mediante la referida *Resolución,* la Junta de Síndicos de la Junta de Retiro declaró *No Ha Lugar* el recurso de Apelación presentado por la señora Parrilla Gordon. En consecuencia, le denegó computar el beneficio de su pensión por incapacidad no ocupacional y el pago del retroactivo, según solicitado por la Recurrente.

Por los fundamentos que expondremos a continuación, **revocamos** la *Resolución* recurrida.

### I.

La señora Parrilla Gordon nació el 3 de junio de 1964 y se desempeñó como Alguacil para la Administración de Tribunales. La

---

[1] Mediante Orden Administrativa OATA-2022-152 se designó a la Hon. Sol de B. Cintrón Cintrón en sustitución de la Hon. Olga E. Birriel Cardona.

Recurrente ingresó al Sistema de Retiro de los Empleados del Gobierno y la Judicatura el 1 de febrero de 1989 y el 16 de junio de 2015 se separó del servicio público. Por tanto, culminó con 24 años de servicios cotizados ante el Sistemas de Retiro.[2]

El **16 de mayo de 2013**, la señora Parrilla Gordon presentó una solicitud de Beneficio de Pensión por Incapacidad ante el Coordinador de los Sistemas de Retiro de su agencia. Mediante carta con fecha de 16 de julio de 2014, la agencia recurrida le informó que su solicitud de incapacidad había sido denegada puesto que no cumplía con los requisitos médicos para ser incapacitada por la agencia.[3]

Posteriormente, el 3 de marzo de 2016, la Junta de Retiro devolvió el caso a la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura ("Administración de los Sistemas de Retiro") para reevaluación de sus condiciones médicas. El **22 de julio de 2016**, luego de la reevaluación ordenada por la Junta de Retiro, la Administración de los Sistemas de Retiro **denegó** el Beneficio de Pensión por Incapacidad Ocupacional y No Ocupacional a la Recurrente. Inconforme con tal determinación, el 18 de agosto de 2016, la señora Parrilla Gordon presentó escrito de reconsideración ante Administración de los Sistemas de Retiro. El 16 de diciembre de 2016, la aludida reconsideración fue declarada *No Ha Lugar*.[4]

De igual forma, el 7 de octubre de 2016, la señora Parrilla Gordon presentó *Apelación* ante la Junta de Retiro. Transcurridos varios trámites procesales, el 16 de marzo de 2017, la Junta de Retiro ordenó la celebración de una *Conferencia con Antelación a la Vista* a celebrarse el 20 de abril de 2017. En esta, las partes

---

[2] Véase determinación de hechos núm. 1 en la *Resolución* recurrida, Apéndice Recurso Revisión, pág. 105.
[3] Apéndice Recurrido, págs. 12-13.
[4] Véase determinaciones de hechos núm. 3 a la núm. 6 de la *Resolución* emitida el 14 de julio de 2021 de la Junta de Retiro, Apéndice Recurrido, págs. 3-4.

estipularon las condiciones médicas que padece la señora Parrilla Gordon. Finalmente, el 27 de agosto de 2019, se celebró la Vista Adjudicativa y el caso quedó sometido para adjudicación.[5]

Evaluados los planteamientos presentados por las partes, mediante *Resolución* emitida el **14 de julio de 2021,** notificada el 4 de agosto de 2021, la Junta de Retiro **revocó** la determinación de la Administración de los Sistemas de Retiro y le concedió a la señora Parrilla Gordon los beneficios de una pensión por incapacidad no ocupacional.[6]

Así las cosas, con fecha de 19 de junio de 2021,[7] la Junta de Retiro le cursó una comunicación escrita a la Recurrente, donde le expresó que, mediante el proceso apelativo se había determinado concederle los beneficios de la pensión por incapacidad no ocupacional, de conformidad con las disposiciones de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como *Sistema de Retiro de los Empleados de Gobierno del Estado Libre Asociado,* 3 LPRA sec. 761 *et. seq.* (*"*Ley Núm. 447"). Además, le apercibió que sería sometida a un proceso de reevaluación dentro de un término de tres (3) años, a partir de la fecha de la comunicación.[8]

El 3 de diciembre de 2021, el Área de Servicios a Participantes de la Junta de Retiro, le notificó a la Recurrente el monto mensual de la pensión y el cálculo utilizado. Añadió que, para el pago del retroactivo de la pensión, se utilizaría como fecha de partida el 19 de junio de 2021, por ser la fecha en la que se le informó que se le concedería el beneficio de la pensión.[9] Luego de varios días, el **6 de diciembre de 2021,** la Junta de Retiro le envió otra comunicación

---

[5] Véase determinaciones de hechos núm. 7 a la núm. 19 de la *Resolución* emitida el 14 de julio de 2021 de la Junta de Retiro, Apéndice Recurrido, págs. 4-5.
[6] Apéndice Recurso Revisión, págs. 3-36.
[7] La referida carta tiene fecha de 19 de junio de 2022. No obstante, la fecha de la carta corresponde a un error, pues fue hace referencia a la *Resolución* de la Junta de Retiro emitida el 14 de julio de 2022, notificada el 4 de agosto de 2022. Véase Carta de 10 de diciembre de 2021 en el Apéndice Recurso Revisión, págs. 58-59.
[8] Apéndice Recurso Revisión, págs. 1-2.
[9] Apéndice Recurso Revisión, págs. 44-45.

a la Recurrente, informándole que **la Pensión por Incapacidad No Ocupacional había sido aprobada con fecha de efectividad de 20 de junio de 2020.**[10]

A su vez, el 10 de diciembre de 2021, la Junta de Retiro, le informó a la señora Parrilla Gordon que por error clerical se colocó como la fecha del cálculo de la pensión, el 19 de junio de 2021, **cuando debió ser 19 de agosto de 2021**. Por lo que, se dejó sin efecto la carta enviada a la Recurrente con fecha de 19 de junio de 2021 y determinó que la nueva fecha de aprobación de los beneficios era el 19 de agosto de 2021.[11]

Mediante carta fechada **14 de diciembre de 2021**, la Junta de Retiro se reafirmó en la cantidad de la pensión otorgada, **así como su conclusión de pago de retroactivo de un año, contado a partir de la comunicación de la Junta de Retiro corregida**. Es decir, contados a partir del **19 de agosto de 2021**. Asimismo, le informó a la Recurrente que producto del error en las fechas se le emitió un pago de dos (2) meses adicionales a los que le correspondía por ley, por lo que se procedería a emitir una factura de cobro.[12]

Así las cosas, el 13 enero de 2022, la señora Parrilla Gordon presentó recurso de apelación ante la Junta de Retiro. En ajustada síntesis, la Recurrente **alegó que el pago por concepto del retroactivo de la pensión debe concederse desde un año de la fecha de la solicitud el 16 de mayo de 2013 o en alternativa desde el 22 de julio de 2016**, fecha en que la Administración de los Sistemas de Retiro le denegó su solicitud de pensión por incapacidad no ocupacional. Por tanto, arguyó que es erróneo computar el retroactivo de la pensión tomando como punto de partida la fecha de la determinación concediendo la pensión,

---

[10] Apéndice Recurso Revisión, págs. 47-48.
[11] Apéndice Recurso Revisión, págs. 58-59.
[12] Apéndice Recurso Revisión, págs. 65-68.

entiéndase el 19 de agosto de 2021.[13] En cuanto a la pensión que debió recibir **prospectivamente** después de la determinación de la Administración del Sistema de Retiro, que posteriormente fue revocada por la Junta de Retiro, sostuvo que dicha cantidad no se trata de un retroactivo, sino de una deuda acumulada. Indicó que la fecha que se debe utilizar para el pago de los beneficios se retrotrae a la fecha de la determinación inicial de la Administración y no a la fecha en la que Junta de Retiro revocó dicha determinación.

Luego de varios incidentes procesales, el 16 de marzo de 2022, la Recurrente presentó ante la Junta de Retiro *Moción Informativa Sobre Conferencia de Status.[14]* Durante la vista del 23 de marzo de 2022, las partes estipularon las controversias contenidas en la *Moción Informativa* y coincidieron en que por tratarse de planteamientos de derecho no era necesario celebrar *Vista Evidenciaria.*

Así las cosas, mediante *Resolución* emitida el 27 de abril de 2022, notificada el 9 de mayo de 2022, la agencia recurrida confirmó la decisión de la Junta de Retiro de **14 de diciembre de 2021, la cual dispuso que el pago retroactivo de la pensión es un año previo desde la fecha en que fue determinada la incapacidad. A tenor con lo antes esbozado, la Junta de Retiro concluyó que en el caso de marras la incapacidad fue determinada el 19 de agosto de 2021, así que el pago del retroactivo se computaría a partir de dicha fecha.**

Inconforme, la señora Parrilla Gordon presentó el recurso de epígrafe y señaló la comisión de los siguientes errores por parte la agencia recurrida:

> PRIMER ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos al no considerar ni resolver el asunto de la inconstitucionalidad de la Ley Núm. 302 de 2 de septiembre de 2000, que enmendó el Artículo 11 y el Artículo 2-111, de la Ley 447 del 15 de mayo de 1951, 3

---

[13] Apéndice Recurso Revisión, págs. 69-73.
[14] Apéndice Recurso Revisión, págs. 92-103.

L.P.R.A. Sección 771 en cuanto a la protección constitucional contemplado [sic] en el Artículo 2, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico que prohíbe al Estado incurrir en el menoscabo de las relaciones contractuales y cuyo propósito no persigue un fin legítimo ni razonable en violación al debido procedimiento de ley, a la igual protección de las leyes y al Artículo 2, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico por lo que sus determinaciones están en conflicto con el balance más racional, justiciero y jurídico de la controversia, abusando de su discreción, actuando de este modo con pasión, prejuicio, parcialidad y error manifiesto.

SEGUNDO ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos al no expresarse en cuanto a la alegación de que el Estado no tiene un interés apremiante legítimo que justifique las enmiendas a la Ley 447 del 15 de mayo de 1951 para limitar el retroactivo del pago de la pensión a un año, contrario a lo dispuesto en el Artículo 2, Sección 7 de la Constitución de Puerto Rico en cuanto a que no se aprobarán leyes que menoscaben las obligaciones contractuales, excediéndose el Tribunal los límites de su discreción actuando de este modo con perjuicio, parcialidad y error manifiesto.

TERCER ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos en el cálculo de la retribución promedio utilizada para el cómputo de la pensión por incapacidad no ocupacional y el cómputo del retroactivo, incurriendo de este modo en error manifiesto en cuanto al derecho aplicable y sobre el cómputo de retroactivo, abusando de su discreción y actuando de forma arbitraria infringiendo valores constitucionales fundamentales, lo que constituye también un enriquecimiento injusto excediéndose el Tribunal los límites de su discreción actuando de este modo con prejuicio, parcialidad y error manifiesto.

CUARTO ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos en cuanto al cálculo del pago del retroactivo al amparo de la Ley #[sic] 302 del 2 de septiembre de 2000, la cual limita la retroactividad del pago de pensión hasta un máximo de un año desde la fecha en fue determinada la incapacidad por el Administrador, por tomar como fecha para el cálculo la fecha a partir de que la Junta de Síndicos revocó la decisión de denegar la incapacidad por el Administrador, o sea la fecha del 14 de julio de 2021 en lugar de calcularlo desde la fecha en que la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura resolvió el asunto denegando los beneficios de incapacidad solicitados y que fuera revocada por la Junta de Síndicos, abusando de su discreción, actuando de este modo con pasión, prejuicio, parcialidad y error manifiesto.

QUINTO ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos en cuanto al asunto de la determinación de la Junta de Síndicos al no acoger el planteamiento de que la decisión de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura del 14 de julio de 2021, por ser el resultado de una apelación se retrotrae al momento de surgir la incapacidad que le impidió trabajar, a la solicitud de los beneficios del sistema de retiro o a la determinación de retiro que fue revocada, cuya determinación denegando la incapacidad fue determinada el 22 de julio de 2016, abusando de su discreción, actuando de ese modo con pasión, prejuicio, parcialidad y error manifiesto.

SEXTO ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos por privar a una persona

de su propiedad sin un debido Procedimiento de Ley toda vez que los beneficios de una pensión por incapacidad se acumularon desde la fecha de la determinación de incapacidad denegando retiro del 22 de julio de 2016 que fue revocada por la junta de síndicos y si debe pagársele a la pensionada no como retroactivo sino como un derecho adquirido que debió pagarse y no se hizo y que se le adeuda a la beneficiaria, abusando de su discreción, actuando de ese modo con pasión, prejuicio, parcialidad y error manifiesto.

SEPTIMO [sic] ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos al expresar que la pensionada debe realizarse evaluaciones medicas [sic] periódicas a pesar de tratarse de una incapacidad total y permanente, actuando de ese modo con pasión, prejuicio, parcialidad y error manifiesto.

OCTAVO ERROR: Erró la Junta de Retiro del Gobierno de Puerto Rico y su Junta de Síndicos al resolver el asunto de la efectividad de la sentencia planteada, la interpretación que hace de la Ley 302 del 2 de septiembre de 2000 y el Reglamento, ya que es irrazonable y produce resultados inconsistentes con la Ley y la Justicia Sustancial, para el cómputo de la pensión retroactiva y en los planteamientos constitucionales, actuando la agencia administrativa de forma arbitraria, irrazonable e ilegal. (Énfasis en original).

El 11 de julio de 2022, la Junta de Retiro presentó su *Alegato en Oposición a Recurso de Revisión.* Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### A. *El menoscabo de las obligaciones contractuales*

El Artículo II, Sección 7, de la Constitución de Puerto Rico, prohíbe la aprobación de leyes que menoscaben las obligaciones contractuales. Esta garantía constitucional limita la intervención del gobierno con las obligaciones contractuales entre partes privadas y las contraídas por el Estado. *Toral Petroleum Puerto Rico Corp. v. Autoridad de los Puertos de Puerto Rico*, 2022 TSPR 89, 208 DPR __ (2022), resuelto el 30 de junio de 2022, citando a *AMPR et als. v. Sist. Retiro Maestros V,* 190 DPR 854 (2014).Su propósito es "asegurar la estabilidad de las relaciones contractuales". *Íd.* Sin embargo, su protección no es absoluta, ya que debe ser armonizada con el poder de reglamentación del Estado en beneficio del interés público. El Tribunal Supremo de Puerto Rico ha expresado reiteradamente que no todo menoscabo de una obligación

contractual es inconstitucional. *AMPR et als. v. Sist. Retiro Maestros V, supra,* pág. 868. El análisis de esta cláusula constitucional depende de, si el contrato que se modifica ocurre entre entes privados o es uno en el que el Estado es parte. *Toral Petroleum Puerto Rico Corp. v. Autoridad de los Puertos de Puerto Rico, supra.*

Los contratos privados se analizan mediante un escrutinio de razonabilidad, en el que se toma en cuenta cuán sustancial es el interés público promovido y la extensión del menoscabo contractual. El primer paso es determinar si existe una relación contractual, y si su modificación representa un menoscabo sustancial o severo. *Íd.* Si se determina que existe un menoscabo severo, entonces es necesario evaluar, si la intervención gubernamental responde a un interés legítimo y si esta racionalmente relacionado con la consecución de ese objetivo. *AMPR et als. v. Sist. Retiro Maestros V, supra,* pág. 869.

Un escrutinio más riguroso es aplicado cuando el Estado es parte de la relación contractual, "debido a que este podría actuar para su propio beneficio". *Toral Petroleum Puerto Rico Corp. v. Autoridad de los Puertos de Puerto Rico, supra.* El menoscabo contractual tiene que ser razonable y necesario para adelantar un propósito gubernamental importante. Al evaluar la necesidad y razonabilidad de una ley, procede conferir alguna deferencia al criterio de la Asamblea Legislativa. A mayor severidad del menoscabo, mayor rigor debe tener el foro judicial en el análisis de la legislación impugnada. No obstante, la validez será sostenida, si el menoscabo surge como consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público. *AMPR et als. v. Sist. Retiro Maestros V, supra,* págs. 869-870; *Trinidad Hernández et al. v. ELA et al.,* 188 DPR 828, 835 (2013).

En *Domínguez Castro et al. v. E.L.A. I,* 178 DPR 1, 81, 83 (2010), nuestro más Alto Foro enfatizó que un menoscabo

contractual severo es aquel que modifica "adversamente los términos o condiciones esenciales del contrato que principalmente dieron motivo a la celebración de éste de modo que se frustren las expectativas de las partes".

### B. La doctrina de autolimitación judicial

La función de los tribunales como últimos intérpretes de la ley está limitada por la doctrina de autolimitación judicial. *Toral Petroleum Puerto Rico Corp. v. Autoridad de los Puertos de Puerto Rico, supra*; *Senado de PR v. ELA,* 203 DPR 62, 86 (2019); *E.L.A. v. Aguayo,* 80 DPR 552, 595 (1958). "La doctrina de autolimitación judicial aplica en aquellas situaciones en las que un tribunal es llamado a evaluar la validez constitucional de una pieza legislativa". *Brau, Linares v. ELA et als.,* 190 DPR 315, 337 (2014). El Tribunal Supremo ha establecido que no se debe juzgar una cuestión constitucional si se puede disponer del caso mediante un fundamento de otra índole. Este principio de autolimitación está predicado en la presunción de constitucionalidad de los actos de otras ramas de gobierno. Además, ello permite que se mantenga el equilibrio necesario entre las tres ramas de gobierno. *E.L.A. v. Aguayo, supra,* págs. 596-597. Cuando se cuestiona la validez constitucional de una regla o ley y surge una seria duda sobre su constitucionalidad, los tribunales deben asegurarse de que no existe una interpretación razonable de la ley, que le permita soslayar la cuestión constitucional. *Toral Petroleum Puerto Rico Corp. v. Autoridad de los Puertos de Puerto Rico, supra,* citando a *Brau, Linares v. ELA et als., supra.* "Así, se propicia que los tribunales se esfuercen por lograr interpretaciones que mantengan la vigencia de las leyes." *Íd.*

De otra parte, como principio de análisis jurídico, "el hecho de que una ley requiera interpretación, no la hace nula", pues aún la más clara de las leyes requiere de la interpretación del foro judicial.

*E.L.A. v. Frig. y Alm. Del Turabo, Inc.*, 155 DPR 27, 36 (2001). Véase, además, *O.E.G. v. Cordero, Rivera*, 154 DPR 827, 835-836 (2001). Estos principios de hermenéutica están firmemente establecidos en nuestra jurisdicción, por tanto, no debemos pasar juicio sobre la validez constitucional de una actuación de otra rama de gobierno, siempre que a través de una interpretación razonable se pueda disponer del asunto planteado. *Nadal v. Depto. Rec. Nat.,* 150 DPR 715 (2000).

### C. *Pensión por Incapacidad del Sistema de Retiro*

Ley Núm. 447 de 15 de mayo de 1951, según enmendada y mejor conocida como *Sistema de Retiro de los Empleados de Gobierno del Estado Libre Asociado,* 3 LPRA sec. 761 *et. seq.*, se promulgó a los fines de instaurar un sistema de retiro para los servidores públicos del gobierno estatal. *López Echevarría v. Adm. Sist. Retiro*, 168 DPR 749 (2006); *Rodríguez v. Retiro*, 159 DPR 467 (2003). Entre la gama de beneficios que brinda el estatuto se encuentra la pensión por incapacidad ocupacional y no ocupacional. 3 LPRA secs. 769 y 770.

En lo aquí atinente, la Ley Núm. 447, *supra,* en su Artículo 10, dispone que **todo aquel trabajador que cuente con al menos 10 años de servicios acreditados y que por causa de un estado mental o físico quede inhabilitado para desempeñar las funciones de cualquier puesto que en el servicio del patrono se le hubiere asignado será acreedor de una anualidad por incapacidad no ocupacional.** 3 LPRA sec. 770. (Énfasis nuestro).

Desde su aprobación, la Ley Núm. 447, *supra,* ha sufrido varias enmiendas a los fines de añadir al Sistema de Retiro del Gobierno Central beneficios para el disfrute de sus participantes. A consecuencia de ello, aumentó el reclutamiento en el sector público, sin que el Sistema de Retiro recibiera nuevas inyecciones de ingreso con las que pudiera responder a las necesidades de los participantes

de nuevo ingreso y el aumento en beneficios legislado. Dichos factores, entre otros, fueron estableciendo "las bases para el surgimiento de un futuro déficit actuarial en el Sistema." Véase Exposición de Motivos de la Ley Núm. 302 de 2 de septiembre de 2000 (Ley Núm. 302). Para atender el asunto, la Asamblea Legislativa enmendó la Ley Núm. 447, *supra,* en diversas ocasiones, con el fin de "garantizar la existencia financiera del Sistema y hacerlo efectivo". *Íd.*

Así, por ejemplo, mediante la aprobación de la Ley Núm. 302, *supra,* que enmendó el Art. 2-111 de la Ley Núm. 447, *supra,* se estableció que **"[e]l pago de la anualidad por incapacidad ocupacional y no ocupacional será retroactivo hasta un máximo de un año, <u>desde la fecha en que fue determinada la incapacidad por el Administrador."</u>** 3 LPRA sec. 771. (Énfasis y subrayado nuestro).

### III.

En el recurso ante nuestra consideración, la parte Recurrente esboza ocho señalamientos de error. En primera instancia, la Recurrente nos solicita que decretemos la inconstitucionalidad de la Ley Núm. 302, *supra,* la cual enmendó el artículo 2-111 de la Ley Núm. 447, *supra,* pues su aprobación tuvo el efecto de menoscabar las obligaciones contractuales que adquirió mediante el beneficio de la pensión por incapacidad. En específico, reclama que la aprobación de la precitada Ley Núm. 302, *supra,* limita el derecho a reclamar retroactivamente a un (1) año el pago de la anualidad por incapacidad ocupacional y no ocupacional a partir de la fecha en que el Administrador determinó la incapacidad. A su vez, la Recurrente esboza que el Estado no tiene un interés apremiante que justifique la limitación del pago retroactivo de la pensión ocupacional y no ocupacional a un (1) año a partir de la determinación del Administrador.

En segunda instancia, la Recurrente alude que erró la Junta de Retiro, tanto en el cálculo de la pensión por incapacidad como en el cálculo para el pago del retroactivo. Sobre ello, arguye que la fecha cierta que debe tomar en consideración la Junta de Retiro **para ambos cálculos**, es la fecha en la que presentó la solicitud para recibir los beneficios (16 de mayo de 2013) o en la alternativa, la fecha en que la agencia denegó inicialmente los beneficios de la pensión (22 de julio de 2016) y que dio lugar a la correspondiente apelación. Por consiguiente, arguye que es a partir de la fecha de la solicitud o la denegatoria inicial que procede el pago de la pensión retroactiva de un (1) año, no a partir de la determinación del Administrador como consecuencia del proceso de apelación.

Como cuestión de umbral, nos corresponde atender los primeros dos señalamientos de error de la parte Recurrente relacionados a la inconstitucionalidad de la referida Ley Núm. 302, *supra*. Según expusimos, los tribunales somos los últimos intérpretes de las leyes, razón por la que estamos limitados por la doctrina de autolimitación judicial. *Toral Petroleum Puerto Rico Corp. v. Autoridad de los Puertos de Puerto Rico, supra*. En ese sentido, nuestro ordenamiento ha reiterado que no se debe juzgar una cuestión constitucional si se puede disponer del caso mediante un fundamento de otra índole. Este principio de autolimitación está predicado en la **presunción de constitucionalidad** de las leyes. *Íd.* De manera que este foro revisor tiene el deber de atemperar el estatuto, si fuere posible, cuando se planteen interrogantes u objeciones de carácter constitucional. *Íd,* citando a *Nadal v. Depto. Rec. Nat., supra.*

En el caso que nos ocupa, la parte Recurrente planteó ante la Junta de Retiro que la Ley Núm. 302, *supra*, era inconstitucional en su aplicación, toda vez que menoscababa sus derechos adquiridos. Sobre ello, la agencia recurrida expresó lo siguiente: "*sobre la*

*alegación de inconstitucionalidad, no tenemos nada que disponer".* Como bien alega la parte Recurrida en su oposición al recurso de autos, a la agencia recurrida no se le delegó la facultad para decretar la inconstitucionalidad de las leyes promulgadas por otra rama de gobierno. La *Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos,* Ley Núm. 106 de 23 de agosto de 2017, 3 LPRA sec. 9531 *et seq.,* creó la Junta de Retiro como un nuevo organismo del Gobierno de Puerto Rico. 3 LPRA sec. 9561. Entre las facultades delegadas a la Junta, las cuales les confirió continuidad a las funciones de las anteriores Juntas de Síndicos de los Sistemas de Retiro, no se le delegó autoridad para adjudicar planteamientos sobre la constitucionalidad de leyes. Siendo así, la Junta de Retiro estaba impedida de atender los reclamos presentados por la Recurrente relacionados a la inconstitucionalidad de la referida Ley Núm. 302, *supra.*

Por tanto, concluimos que la Junta de Retiro, como organismo del Poder Ejecutivo, no incidió al abstenerse de resolver sobre la inconstitucionalidad que de la Ley Núm. 302, *supra.* Ciertamente, dicha controversia no fue un asunto delegado a la Junta de Retiro, dentro de los poderes conferidos en la Ley Orgánica. Aún cuando reconocemos que somos los tribunales los últimos intérpretes de la ley, este foro revisor podrá resolver aquellas cuestiones que ya han sido adjudicadas previamente. Consiguientemente, este foro revisor está impedido de atender los primeros dos señalamientos de error.

En torno al tercer, cuarto, quinto, sexto y octavo señalamiento de error, los discutiremos en conjunto por estos estar relacionados entre sí. Es la contención de la Recurrente que el pago de pensión por incapacidad ocupacional y no ocupacional y del retroactivo procede desde el 16 de mayo de 2013, fecha en que solicitó los beneficios de la pensión por incapacidad, o en su alternativa, a

partir del 22 de julio de 2016, fecha en que la entonces Administración de los Sistemas de Retiro, le denegó la aludida solicitud. Como corolario de ello, sostiene la Recurrente que erró la Junta de Retiro al resolver que la determinación de incapacidad procede desde 19 de agosto de 2021, privándola así de un debido proceso de ley. Por último, argumenta la señora Parrilla Gordon que el pago prospectivo de la pensión por incapacidad desde la fecha que le concedieron los beneficios no se trata de un retroactivo.

Según expusimos anteriormente, el texto incorporado mediante la enmienda aprobada a la Ley Núm. 447, *supra,* por virtud de la Ley Núm. 302, *supra*, en lo aquí relevante, estableció que el pago de la anualidad por incapacidad no ocupacional es retroactivo hasta un máximo de un (1) año, contado "desde la fecha en que fue determinada la incapacidad por el Administrador". En el caso que nos ocupa, **la determinación de incapacidad a la que alude la enmienda a la Ley Núm. 447, *supra*, <u>ocurrió el 22 de julio de 2016, fecha en que la entonces Administración de los Sistemas de Retiro adjudicó erróneamente la petición de la Recurrente sobre los beneficios de pensión por incapacidad no ocupacional, denegando su solicitud.</u>** Si bien es cierto que en ese momento le fue denegada a la Recurrente su solicitud de pensión por incapacidad, dicha determinación fue una errónea en derecho, lo que provocó que la Junta de Retiro acogiera su solicitud de apelación, reconociéndole su derecho a la pensión mediante *Resolución* emitida el 14 de julio de 2021.

La pensión por incapacidad no ocupacional que debió recibir la señora Parrilla Gordon no se trata de un cómputo retroactivo, sino de la pensión acumulada y adeudada desde la fecha de la denegatoria por parte de la Administración. Al ser revocada dicha determinación por la Junta de Retiro, concluimos que **el 22 de julio de 2016 es la fecha cierta desde la cual la Recurrente debió**

**comenzar a recibir los beneficios solicitados.** Por tanto, la *Resolución* de la Junta de Retiro aprobando la pensión por incapacidad ocupacional y no ocupacional se retrotrae al 22 de julio de 2016, fecha en la cual la Recurrente debió comenzar a recibir los beneficios de la pensión a la que tiene derecho.

Por lo antes expuesto, revocamos la determinación de la Junta de Retiro. En consecuencia, concluimos que el beneficio de pensión por incapacidad de la Recurrente deberá ser computado a partir del 22 de julio de 2016, fecha en que la Administración para el Sistema de Retiro adjudicó **erróneamente** que no le correspondía el beneficio. Ello, debido a que mediante *Resolución* emitida el 14 de julio de 2021, la Junta de Retiro revocó a la Administración y determinó que la Recurrente era acreedora de los beneficios de la pensión por incapacidad. A su vez, el cómputo para el pago retroactivo que establece el Art. 2-111 de la Ley Núm. 447, *supra,* deberá ser contado a partir del 22 de julio de 2016.

Finalmente, nos corresponde resolver el señalamiento de error séptimo esbozado por la Recurrente. Plantea que erró la Junta de Retiro al requerirle a la Recurrente evaluaciones periódicas para poder continuar recibiendo los beneficios de incapacidad ocupacional, a pesar de tratarse de una incapacidad total y permanente. Le asiste la razón.

No existe controversia en cuanto a que la Recurrente recibe actualmente una pensión por incapacidad no ocupacional, toda vez que esta cumplió con las condiciones para el retiro, por lo que su pensión no se encuentra sujeta a cambios o menoscabo. Según dispone el Artículo 2-111 de la Ley Núm. 447, *supra,* los beneficiaros de la pensión deberán someterse a exámenes periódicos, cuando dicha incapacidad **no sea total y permanente**. En específico, el aludido artículo establece que "[c]uando la prueba médica revele que el participante está **total y permanentemente incapacitado** para

cumplir los deberes de cualquier cargo, no será necesario el examen periódico". 3 LPRA sec. 771. (Énfasis nuestro). En atención a lo anterior, concluimos que incidió la Junta de Retiro al requerir que la Recurrente se sometiera a evaluaciones periódicas para la continuación de los beneficios de pensión por incapacidad no ocupacional, a pesar de ser beneficiaria de la pensión por una incapacidad total y permanente.

**IV.**

Por los fundamentos anteriormente expuestos, **revocamos** la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Cintrón Cintrón disiente sin opinion escrita.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones